Sherman Case and another v. Erastus F. Jennings and another.

Where it was proved that A had authority from B to sell a slave, and it was also proved that A afterwards, setting up a claim to the property as his own, or upon some claim of unsettled accounts with B, ran the slave off and sold her, with a view to appropriate the proceeds to himself, it was held that the fraudulent conduct of A worked a revocation of his authority as B's agent.

Where a purchaser buys from an agent, with a knowledge that the agent is acting in violation of his duty as agent, he cannot, in a suit by the principal to recover back the property, avail himself of the fact of agency.

Case v. Jennings.

Instructions must be referred to the facts in evidence, and if they are correct, in application to such facts, it is sufficient.

Where a person comes into the possession of personal property, and sells it as his own to one who is ignorant of the want of title in his vendor, his ignorance of the true state of the title will not prevent the owner (except in the cases provided for in the statute of frauds, and the registry laws,) from recovering the property. And it seems that this rule would apply where property comes to the possession of a person as agent for sale, who, in fraud of his principal, runs the property off with a view of selling it and appropriating the proceeds to his own use ; so that the purchaser could only maintain his title by proof that he knew of the original agency, and by failure of proof that he had knowledge of the fraud of the agent, or of circumstances of suspicion sufficient to put him on his guard.

It would seem that in order to sustain a plea of innocent purchaser, it is not necessary to prove the payment of the purchase money, but that it is sufficient, in this particular, if the purchaser has given his negotiable note, which has been assigned to an innocent holder, for value.

See this case for circumstances under which the Court refused to reverse for error in giving and refusing instructions, on the ground that the verdict was right on the facts.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

Suit by appellees, Erastus F. Jennings and Charles W. Henderson, against Sherman Case, one of the appellants, to recover a slave or her value.

The petition alleged that the defendant had been connected with plaintiffs, as partner in stockraising ; that in April, 1855, the partnership was dissolved by mutual consent ; that a division of the partnership property was then had, and that defendant received his portion of the same ; that after such division, plaintiff Jennings, who acted for himself and his co-plaintiff, having authority so to do, placed certain horses, mules, &c., belonging to plaintiff, in the possession of defendant, and employed him to take them into other counties and sell them for plaintiff's benefit ; that, in doing so, he disposed of said stock or a part of it, and received for the same a negro woman named Celia, and which negro, they allege, he has

fraudulently carried off, or conceals, in order to defraud the plaintiffs. Writ of sequestration.

The defendant answered, admitting that certain property, consisting of horses, mules, &c., was placed in his possession by plaintiffs to be sold; but alleged that a large part of the same, by sale of which the negro was obtained, was a portion of the partnership property which had never been divided, and that he was equally interested therein with the plaintiffs; that the plaintiffs were indebted to him, and that he was authorized by them to sell the slave to pay debts of the partnership, and the one due to himself, and a claim of interest of one James McLaurin in said slave, a mule belonging to said McLaurin having been given in part payment for said slave. Defendant further alleged that in January or early in February, 1856, he sold the slave Celia to one Angus McLaurin for $600, for which McLaurin gave defendant his note due January 1st, 1857, which note defendant had assigned for value to L. C. Cunningham of Bastrop county. And defendant averred his readiness to account with plaintiffs at any time. The sequestration was levied upon the slave in the possession of Angus McLaurin, who gave a bond of replevin and intervened, alleging that he bought the negro in question from the defendant Case, that he purchased in good faith, without any notice of an adverse claim, and that, as a consideration, he executed his note to the defendant for $600, and which note Case subsequently transferred to L. C. Cunningham, as the intervenor is informed, for value without notice.

The testimony was as follows: The deposition of T. A. Morrow in answer to interrogatories in chief by defendant Case, and cross-interrogatories by plaintiffs, introduced by plaintiffs. Am acquainted with Jennings and Case, but not with Henderson, plaintiffs and defendant in partnership in stock-raising from 1852 to 1855; dissolved April, 1855; Case drove off, at the time, his portion of the stock, it being divided at that time; eighteen head running at large that were not

divided ; Case took them and sold them during the summer of 1855, in Bastrop, Fayette and Travis counties ; Case traded off two for other horses, and afterwards sold them ; sold them all for cash ; one of the traded horses for $35 ; $25 per head for balance of the undivided stock ; Jennings told Case to take them off and sell them as he wanted to settle some debts ; witness went with Case to sell said stock ; has not been paid for the trip yet; Jennings promised the pay; twenty-four horses belonging to Henderson and Jennings were given by Case for the girl Celia to a man named King in Ellis county ; witness heard Jennings tell Case, that if he, Case, would settle a note witness owned against Jennings, and settle some other debts, he, Jennings, would let Case have the girl, and Case refused to do so, saying he could not raise the money ; witness heard Jennings admit that the eighteen head carried down the country were partnership property, about the time Case and witness started off.

Cross-interrogatories. The partnership was dissolved because Case desired to withdraw his portion of the stock ; Case got seventy-four or five head, and Henderson and Jennings about twice that number ; Case removed his third from the rancho at the time of the division. In answer to the cross-interrogatory, Were they (the eighteen undivided) not sold by Case to pay himself for services rendered to the partnership? Witness replied, that they were sold by Case, but that he did not know as to the last clause of the interrogatory. Witness heard Case say he took two colts of the eighteen at $50 each : two men named Barnett and Parker were along on the trip through Travis, Bastrop and Fayette counties ; Jennings along as far as Cunningham's in Fayette county ; Case and Jennings friendly ; Jennings and Henderson had separate stock of their own along for the purpose of being sold ; some of the latter sold by witness for Case in Bastrop county ; do not remember the amount ; about $200.

Cross-interrogatory 7th. If you say that Jennings started

on said trip in the summer of 1855, state whether he took any of the stock along for sale, which had been previously divided off to himself and Henderson by Case ; did he not take about twenty-eight or twenty-nine of his own and Henderson's stock ?

Ans. I [mistake for " C," or " we," probably—REPS.] took thirty head of Jennings' and Henderson's separate stock on the trip to Ellis county, with the exception of one mule, which belonged to James T. McLaurin, and sold them all ; twenty-four of which were given for the girl Celia.

Case received the money for the stock sold on the trip below. In answer to a cross-interrogatory whether Case did not receive the negro girl Celia in pay for the stock of Jennings and Henderson sold by him, he replied as follows : I do not know that I ever heard Case acknowledge that the negro was the property of Jennings and Henderson, or in so many words, but it was an understanding all around, that the negro girl was their property ; for I heard Case tell Jennings that he could not sell the stock for money, and consequently took the negro in trade ; and he, Case, told Jennings that it was the best he could do for him and Henderson.

I heard Case say that he wanted to buy the negro Celia from Jennings, for his brother Quincy Case ; Case afterwards told Jennings that he was not able to raise the money to pay for her, and consequently could not buy her.

Cross-interrogatory. State when Case first laid claim to said negro ; was it not after Jennings and Case had disagreed in making a final settlement? and state what Case then did with said negro ; whether he attempted to run her off, or did so, or to make way with her in any other manner, so as to defeat Jennings' claim.

Ans. I do not know. Case ran the negro off to sell her ; Case attempted to make way with the negro girl.

Cross-interrogatory 13. State whether Case pretended to sell or had sold said slave ; also, whether Angus McLaurin knew, or could easily have known of said claim ; whether

Case was not notoriously insolvent, so that judgments could not be made off of him ; and state any circumstances known to you, showing such knowledge of Jennings' claim, and that no purchase money has been paid by said McLaurin to Case.

Ans.  I have heard that Angus McLaurin bought the girl Celia from Case.  Angus McLaurin knew that Case run her off, to keep her out of Jennings' sight, and McLaurin certainly did know, or could very easily have known of Jennings' claim. Case was notoriously insolvent.  I am confident that no money was ever paid by McLaurin to Case.  Case has got McLaurin's note for the negro girl Celia.

John Morrow, a witness for plaintiff, testified that he knew the partnership horses by the brand ; there was an understanding that there was some stock undivided after the division of the 27th April, 1855.  Did not know the divided from the undivided.  When Case took the horses off on the trip to Fayette and Bastrop counties, he took about sixteen head of undivided partnership horses, and also horses belonging to Jennings and Henderson ; don't recollect how many of the latter. .When the trip to Ellis county was made, I have heard Case say, they traded the horse property taken off for the girl. I have seen the girl ; was with Case when he bought her ; saw him again with the slave in Travis county.  He bought her from a man named King ; do not recollect to have heard Case claim her, more than he said he had traded horses for her.  I do not know whose horses were traded for the negro, except one mule, which belonged to James T. McLaurin.  Before the trip when the negro was purchased, I heard Jennings and Case speaking of taking off horses to pay debts, but do not know what debts ; thinks Case was authorized to take off Jennings' and Henderson's horses to sell them.

Defendant introduced H. G. Blakey, who stated he was present when the negro was sold by Sherman Case to Angus McLaurin, and witnessed the bill of sale ; was sold for $600 ; that said sale was made before this suit was begun ; that Case

kept the negro at his house, until he sold her, except for a short time, when he took her off to sell her, but failed, after which she was at his house for a month before her sale, during which time Jennings was several times there.

Cross-examined. Stated that he was not certain that Jennings was at Case's house during the month preceding said sale ; but thought he was.

The defendant then introduced R. F. Parker, who, being sworn, testified that he was with Sherman Case when he made the first trip in 1855 to Bastrop and Fayette counties with horses and mules. He sold on that trip nine undivided horses ; there were sixteen undivided horses taken on that trip ; those not sold, were taken by Case to Ellis county, on the trip when the negro was bought. Witness heard Jennings tell Case to take the horses off and sell them, and pay himself and pay other debts. Witness heard Case tell Jennings that he would not advance any more money for the company until they paid him what they owed him. T. A. Morrow was along on the trip to Bastrop. Case paid him, Parker, for his services.

The intervener, Angus McLaurin, then introduced Barnett, who stated that he was along on the trip to Bastrop and Fayette counties, and was along when the negro was purchased ; that Case paid for said negro in horses, and a mule belonging to James T. McLaurin ; is acquainted with the stock which was left undivided at the time of the dissolution of the partnership ; and that Case gave in part payment for said negro, about half of the number, given for said negro, which half consisted of undivided horses, and also a mule belonging to James T. McLaurin. Witness saw the money which resulted from sales made on the first trip, paid over to Jennings ; heard Jennings tell Case to take horses off and pay himself, and other debts of the partnership. Witness was paid for his services by Sherman Case ; has frequently seen the negro. Case had the negro at his house some three months after her purchase. Jennings was frequently at the house of Case during

that time. After Case returned from Ellis county with the negro, Jennings and Case attempted to make a settlement, at Case's house, of their business, but failed to make one. Witness was present when the stock was divided, except about twenty-five head, which could not then be gathered, and were left undivideds ; is familiar with the partnership stock ; was present when they were branded, and has been familiar with them for two years ; has herded the horses. Witness further testified that he heard Jennings tell Case after he returned from Ellis county, and before the sale to McLaurin, to take said negro girl Celia and sell her, and pay himself and the debts of the partnership. After that, Case took said negro girl off to sell her, but failed to make sale, and brought her back. The negro was kept openly at Case's house after his return, and Jennings was several times there.

The defendant then introduced R. J. Daniels, who testified that he heard Jennings tell Case to take the negro and sell her. This was after the return from Ellis county, and before the sale to McLaurin.

Intervener then introduced Quincy Case ; heard Jennings tell Case to sell the negro and pay himself and other debts of the partnership ; was well acquainted with the horses ; has been with them for three or four years. Jennings authorized Case to sell the negro, after his return from Ellis county, and before the sale to McLaurin.

Defendant then introduced James McLaurin, who stated that his mule was worth fifty-five dollars ; was taken off by Sherman Case, on the trip during which the negro was purchased ; that Sherman Case settled with him for said mule.

Hugh McLaurin swore that he had been requested by Sherman Case to find him a purchaser for said negro ; had been at Case's house several times before said slave was sold, and had seen Jennings there and had also seen the negro.

The Court, without request, charged the jury as follows :

If the jury believe from the evidence, that the property, by

the sale of which Case obtained the negro, was the property of the plaintiffs, and that Case was employed by them as an agent to sell said property for their benefit, then he is liable to the plaintiffs for the negro, or for her value. And, in case you find for the plaintiffs, you will also find the value of the negro from the testimony before you.

If the jury believe that the said property, or a portion of the same, was undivided partnership property, then Case had an interest therein, and, to the extent of that interest, he has a right to the negro in question or to her value.

Furthermore, if the jury believe that the property, by means of which 'the negro was obtained, was the property of the plaintiffs, and that they were indebted to the defendant and employed him to sell the property to pay the debt due himself, as well as others, and he appropriated the negro to this purpose, then he would not be liable therefor, if the negro was not worth more than the amount of such debts; and in such case they will find for the defendant.

If the defendant had no right or authority to sell the negro, then McLaurin cannot be protected in his purchase from Case, unless he bought without notice of the claim of the plaintiffs, and had paid the money therefor. But if the jury believe that said slave was partnership property at the time of the sale to McLaurin, then they will find the same to be the property of McLaurin.

The following instructions were given by the Court at the request of the plaintiffs:

1st. If the property, for which the negro Celia was given, belonged to Jennings and Henderson, then the equitable title to the negro would belong to them.

2nd. The confession of the defendant Case, (if proved) that the negro belonged to Henderson and Jennings, would be sufficient evidence of itself to establish their title, as against Case and those claiming under him.

3rd. In order for the intervener to maintain the plea of in-

nocent purchaser, he must show that he bought without notice of the claim of Henderson and Jennings and had paid the purchose money.

4th. If the defendant Case was the agent of Henderson and Jennings, to sell the negro Celia, this would give him no power to sell in his own name, and such a sale would be a fraud on the rights of Henderson and Jennings.

5th. The jury may presume a revocation of a verbal agency to sell property, from acts of bad faith in the agent afterwards, which came to the knowledge of the principal, such as attempting to run the property off for his own use.

The following instructions, asked by defendant, were given by the Court, except No. 2, which was refused:

1st. That if the jury believe from the testimony that he, Case, had an interest as a partner, in the purchase of the negro, or that he had authority to sell the slave, then the private accounts of the partners cannot affect this suit.

2nd. That this suit, being for specific property, you cannot find upon any other issue, than as to whom the slave belongs, and you cannot give a money judgment.

3rd. That if Case had a right to sell the slave, you must find for defendant, no matter how the partnership debts stand, as the same is not in issue.

4th. It is the duty of the jury to reconcile any conflict of testimony, if you can ; if you cannot, the preponderance of testimony must govern you in your finding.

The following charges asked by the intervener, McLaurin, were given by the Court, with the exception of No. 4, which was refused.

1st. That, if the jury believe from the evidence, that McLaurin purchased the slave in controversy, from Sherman Case before the commencement of this suit, and that said slave was, at the time of said sale, the partnership property of said Jennings, Henderson and Case, they will find the same to be the property of said Case.

2nd. That, if the jury believe from the evidence, that said

slave, at the time of the sale to McLaurin, belonged to Henderson and Jennings, and that Case sold said slave to McLaurin, under authority from Jennings, who was acting for himself and Henderson, and that McLaurin executed his note to Case for the purchase money for said slave, they will find the said slave to be the property of McLaurin.

3rd. If the jury believe from the evidence, that the said slave was purchased with partnership property, belonging to plaintiffs and Case, then said slave was, in law, partnership property, belonging jointly to plaintiffs and Case.

4th. That, if the jury believe from the evidence that Case was authorized by Jennings to sell the negro in controversy, and that, being so authorized, he sold said negro to McLaurin, then McLaurin's right to said slave would not be affected by his knowledge of Jennings claim to the negro, and they will find the title to said slave to be in McLaurin.

5th. If the jury are satisfied that plaintiffs knowingly permitted Case to keep possession of said slave, and to exercise acts of ownership over her, and sell her to McLaurin with plaintiffs' knowledge and consent, and without any objection on their part, then they will find the title of said slave to be in McLaurin.

Verdict and judgment for plaintiffs ; appeal by Case and McLaurin.

*Oldham & Terrell*, for appellants.

*J. A. & R. Green*, for appellees.

WHEELER, J. There were two questions for the jury to decide, upon the verdict ; and they involve the merits of the appeal : 1st. Did the plaintiffs make out their title ? 2nd. Had the defendant, Case, authority to sell ?

Upon the first question, there is no difficulty. The conduct

of the parties and the facts of the case, as disclosed by the evidence, were amply sufficient to warrant the jury in coming to the conclusion that the unqualified property was in the plaintiffs.

The disposition of the remaining question would be equally free from difficulty, if it were unembarrassed by instructions given at the instance of the plaintiffs. There is no doubt that Case had authority to sell; expressly conferred by the plaintiffs, for a certain, specified object; and he had tried to sell and failed. All this is positively proved, and is indisputable. But it is proved just as positively, that he also attempted to run off, and dispose of, and conceal the negro from the plaintiffs; and this was known to his co-defendant, McLaurin. This conduct, on his part, was an absolute abandonment and renunciation of his agency. It was utterly incompatible with the confidential relation, created by the delegation of authority to him to act as agent. It is not pretended that his agency authorized him to run off, and dispose of the property as his own, and for his own benefit. The moment he attempted to do so, his agency was at an end; and he was as completely without authority for his after acts, as if he had never been entrusted with an agency for the sale of the property. It is impossible to conceive of any act of revocation or renunciation of the authority of the agent, which would more certainly and unequivocally put an end to the agency. It was totally incompatible with that relation. McLaurin bought with a knowledge of the fact, that Case was acting in violation of his duty as agent, and was, consequently, acting without authority. This is plainly the case which the record presents; and it is free from difficulty. It is clear that the defendant McLaurin cannot maintain his purchase under the authority which had been confided to his co-defendant, and which the latter had not pursued, but had abused and violated to his knowledge; and that his purchase conferred on him no title or right whatever. The judgment is manifestly right on the merits; and the only

question is, whether there be error in the rulings of the Court, upon instructions asked by the parties, of a character to require its reversal.

It is objected to the second instruction given at the instance of the plaintiffs, that it does not restrict the confessions referred to to, a tim eanterior to the sale. But it must have been so understood ; for there was no evidence of any admissions made subsequent to the sale ; or of any other than those, which, it is evident from all the facts, must have been anterior to that time. Dates are not given with accuracy ; but the only fair inference from the evidence is, that the confessions or admissions referred to were not only anterior to the sale, but contemporaneous with the delegation of authority to sell. The instruction can have had reference to none other, and therefore cannot have misled.

If the third instruction were pertinent and material, it might be liable to objection. For I apprehend that, where the doctrine applies, it is true, as stated by counsel, that the giving of a negotiable note, which has been assigned to an innocent holder, will be of equal effect with the payment of money. But the case which the instruction supposes, is not a case to which the doctrine of innocent purchaser applies. The charge proceeds upon the supposition that the defendant's ignorance of the plaintiff's title, would enable him to claim protection as an innocent purchaser. This was evidently a mistaken concession in favor of the defendant. The possession of a negro will not enable the person in possession to convey a good title, even to an innocent purchaser, unless he either has the title in himself, or has authority from the owner. If a person comes into possession of personal property, and sells it as his own to one who is ignorant of the want of title in his vendor, his ignorance of the true state of the title will not prevent the owner from recovering the property. It is unlike the case of a purchaser in ignorance of a prior unregistered conveyance ; whose want of notice will give his title priority over the elder deed ; which

Vol. XVII.                    43

seemed to have been in the mind of counsel asking the instruction. It was not in respect to the title being in the plaintiff, but only in respect to the termination of the agency,. that the question of notice was material. If this defendant knew, as he doubtless did, that Case had been authorized to sell, then it was material to show that he knew of the revocation or determination of the agency ; at least it was material to bring home to him a knowledge of circumstances, sufficient to put him upon inquiry, and bring him within the influence of the maxim *caveat emptor*. But in respect to the plaintiffs' title, the rule would apply to him with equal force, whether he knew of it or not. With respect to the agency, the proof is positive that he knew of facts, from which he was bound to know that his vendor was acting in the exercise of an usurped and unwarranted authority. The instruction, therefore, was irrelevant and immaterial ; and though it conceded too much to the defendant, and gave him the advantage of the chances, arising from the making of a a false issue in his favor before the jury, it could not operate to his prejudice, and cannot afford a ground for reversing the judgment.

The fourth instruction given, might have been improper in a different state of case, where an agency in fact subsisted, or where the party bought without notice that a pre-existing agency had been determined. For, although the delegation of authority does not, in general, empower the agent to contract, in his own name, yet if he, in fact, possess due authority to contract as agent, and makes the contract in his own name, the principal may be equally liable upon the contract as if the agent had used the name of the principal. (Story on Agency, Sec. 160 a.) And although the agency was in fact determined, and his assuming to act was a fraud upon his principal, yet if the person with whom he contracted had not notice of the determination of the agency, and acted innocently, he would not be affected by the fraud of the agent. But the present is not such a case. Here the agency was determined, and the de-

fendant bought with notice of the acts by which it was deter-
mined ; and as applied to the facts of the case, there was no
error in the instruction.

The same may be said of the fifth instruction ; since it was
in proof that the acts of bad faith came to the knowledge of
the defendant. But if notice had not been brought home to
him, he could not have been affected by notice to the plaintiffs
of the acts of bad faith ; and the instruction would have been
improper. As the fact was, however, there was no error in the
instruction.

The fourth instruction asked by the defendant, would cer-
tainly have been correct in the absence of notice to the defen-
dant of the determination of the agency ; or, if the evidence
had warranted the supposition that the agency was not deter-
mined, but in fact subsisted at the time of the sale. But, upon
the evidence, we think the Court might well refuse an instruc-
tion, which supposed the continued subsistence of the agency ;
or which submitted to the jury the question of its continued
subsistence ; since, had they so found, their verdict would have
been contrary to the evidence.

We are of opinion, therefore, that there is no error in the rul-
ings in question, which will authorize a reversal of the judgment.

Finally, in respect to the merits, we think it does not admit
of doubt, that the agency was determined before the sale to the
defendant McLaurin. If he was advised of the nature of the
agency, he must have known that the authority, simply to sell
for money to pay debts, did not authorize the sale to himself
on a credit. If he was advised only of the authority of the
agent to sell generally, he must have known that the attempt
of the agent to run off the property and conceal it from his
principal, was a violation of his duty to the latter, which put
an end to the confidential relations between them, and neces-
sarily determined the agency. If he had no knowledge of the
existence of the agency, he is simply in the condition of a
purchaser from one without title or right to sell. In neither

case will his purchase be of any avail as against the claim of the owner of the property.

We are of opinion that there is no error in the judgment, and it is affirmed.                          Judgment affirmed.