[Opinion delivered June 14, 1880.]

---

### P. H. & J. T. SWEARINGEN v. ED. BUCKLEY.

#### (Case No. 3910.)

1. PAYMENT — RAILROAD "TIME CHECKS."— Whatever is received by the creditor in satisfaction of his debt will be effectual as a payment, as between the creditor and his debtor. Receiving "time checks" of a railroad, in satisfaction of a note, by a creditor of his debtor, is a payment. 2 Greenl. Ev., sec. 516; id., 520; 2 Dan'l on Neg. Inst., sec. 1222; id., 1623; Blair & Hoge v. Wilson, 28 Gratt., 165; Boulware v. Robinson, 8 Tex., 330; Ables v. Lee, 6 Tex., 434; McNeil v. McCamley, 6 Tex., 165; Robson v. Watts, 11 Tex., 768; Cartwright v. Jones, 13 Tex., 4; Wells v. Fairbanks, 5 Tex., 582; Jennings v. Case, 17 Tex., 673; Morphy v. Garrett, 48 Tex., 249; Life Ins. Co. v. Ray, 50 Tex., 518.

2. NOTICE — NON-NEGOTIABLE INSTRUMENT.— It is the duty of the assignee of a non-negotiable instrument to promptly notify the maker of such transfer, and the maker will be protected if he pays the payee without notice of assignment, the absence of the note being reasonably accounted for. Daniels on Neg. Inst., sec. 742.

3. ESTOPPEL — PROMISSORY NOTE — DEED OF TRUST — SALE UNDER.— Equivocal transactions by the holders of a note, not known to the maker, will not constitute as to him an estoppel. The assignment

of a non-negotiable instrument, after maturity, passes no right against any defense the maker could have against the original payee. The right to order a sale of property under a deed of trust given to secure such an instrument depends upon the existence of an indebtedness. The debt satisfied, the power ceases, and a purchaser at such sale does not acquire any title to the property so sold, notwithstanding the provision of the deed of trust, that " the recitals in the conveyance made to the purchaser shall be full evidence of the matters therein contained, and no other proof shall be requisite of request by the holder of said indebtedness to the trustee to enforce this trust, or of the advertisement or sale of any particulars thereof, and prerequisites of sale shall be presumed to have been performed, and the sale under the powers herein granted shall be a perpetual bar against the maker of this trust deed and his heirs and assigns."

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

On May 5, 1876, Ed. Buckley, who resided in Hempstead, bought of Peter Rasmussen two lots in the town of Brenham for $500, paying cash $264 and executing his note for $236, payable to Peter Rasmussen on or before May 1, 1877. To secure the note Buckley gave a deed of trust on the lots, having received a deed therefor, to J. T. Swearingen.

December 7, 1876, Buckley went to the business place of the payee, with his deed, and proposed paying the note, offering one or more time checks (on the H. & T. C. R. R. Co., of which company Buckley was an employee) in payment; the checks were taken and $20 in excess returned to Buckley, and a receipt in full at the time indorsed on the deed for the lots. The payee told Buckley at the time that the note was mislaid and would never trouble him any more.

It seems that soon after the date of the note it passed into the hands of one McDonald, who claimed to own it in right of having deeded the lots to Rasmussen to keep it from his creditors. After the maturity of the note, McDonald sold it to P. H. and J. T. Swearingen, lawyers, who had prepared the deeds, etc., between the maker and payee, for $150. Neither McDonald nor the Swearingens notified Buckley of their claim. Under the power a substituted

trustee, after careful advertisement, sold the lots and deeded them to said Swearingen & Swearingen.

September 20, 1877, Buckley brought suit to set aside and annul the sale and deed against the purchasers, P. H. & J. T. Swearingen, alleging the facts in detail. The allegations as to payment, etc., are substantially as follows:

"That plaintiff, being indebted to Peter Rasmussen, on the 5th of May, 1876, executed to him his note, in substance as follows:

"$236 cy.                         BRENHAM, May 5, 1876.

"On or before the 1st day of May next, I promise to pay to Peter Rasmussen the sum of two hundred and thirty-six dollars, cy., balance due for purchase of lots in Brenham, with 10 per cent. interest thereon from maturity. This note is secured by deed of trust bearing date herewith to J. T. Swearingen.

(Signed)                         "ED. BUCKLEY.

"That on the same day, the better to secure the payment of the note, he executed to J. T. Swearingen, as trustee, a deed of trust on the lots mentioned in the note. That on or about the 7th of December, 1876, he paid to Peter Rasmussen the full amount due on the note, believing him to be the owner of the note, and that it was mislaid, no notice of any assignment or transfer having been given to him; that he paid off and discharged the note, believing it to be the property and in possession of the payee, and without notice or reason to believe that it had been transferred to any other person."

The defendants pleaded general denial; set up their purchase as showing legal and equitable title; denied particularly that plaintiff had paid the note as alleged, etc.

The case was submitted to the judge, and, at request of parties, he announced the grounds of his judgment. They are as follows:

1. The court discarded the testimony of Rasmussen.

2. The note is non-negotiable.

3. The plea of payment was sufficient to authorize the introduction of the evidence of plaintiff tending to show payment of said note.

4. The evidence was sufficient to establish the payment of said note without actual notice that Rasmussen was not then the owner of the same.

5. That the facts in evidence were not sufficient to put plaintiff upon his inquiry as to the fact that the note was not, at the time of payment, the property of some other person for value, and thus defeat the action.

6. That plaintiff was not estopped to show payment of said note, and to set aside the sale of said lot and cancel the deed to defendants, because of the recitals in said trust deed of the negotiability of said note and the sale under the same.

7. The fact that the defendant purchased said note for a valuable consideration, and purchased said lot at sale under said trust deed (all of which the court finds to be true), does not constitute a sufficient defense to this action.

8. That defendant did not exercise due diligence when he purchased the non-negotiable note, and upon these grounds judgment was rendered for the plaintiff.

The court rendered judgment for the plaintiff. The defendants appealed.

The numerous assignments of error relate:

1. To the relevancy of the testimony and its sufficiency to sustain the allegation made in the petition of payment of the note by plaintiff.

2. Whether there was evidence of actual or constructive notice to plaintiff at the date of his payment of the claim of McDonald or of defendants to the debt, etc.

3. The effect of the recitations in the deed of trust executed by plaintiff, and of the acts under it, as an estoppel.

The facts will not be stated more in detail than necessary to the points decided. The testimony to the ownership of the note and to the dealings among the parties was confused and in part inconsistent.

*Shepard & Garrett*, for appellants.

*Sayles & Bassett*, for appellee.

A. S. WALKER, J.—I. The petition alleged payment and discharge of the note. This, as an allegation of payment, was sufficient. The full allegations are given above.

The appellant insists that the testimony admitted tended to show not a payment, but an accord and satisfaction; that money was not paid, nor the full amount; both of which, appellants insist, must concur to support the allegation. The testimony is, in substance, as follows on this point:

Peter Rasmussen testified: "That the note was paid to him in full on the 7th of December, 1876, by plaintiff, in presence cf Sterling and O'Mealy, and perhaps others. That he did not have the note in his possession at the time; that Mrs. McDonald had taken the note from his possession through mistake. That he told Buckley the note was mislaid, and that it would not trouble him. That, on the 9th of February, 1877, J. T. Swearingen called upon him to indorse the note, which he refused to do. Sterling proves the payment in money and "time checks." (Time checks would be an order on the H. & T. C. R. R. Co.)

O'Mealy testified: "That he was present on the 7th of December, 1876, when Ed. Buckley paid the note to Peter Rasmussen. He saw Buckley pay Rasmussen some 'railroad time,' but don't know the amount, but Rasmussen handed him back some change in money. A receipt was given on the deed for the amount, which he attested as a witness. It was admitted by defendants that there was a receipt on the deed to Buckley for $236, in full of the vendor's lien note described in the deed, and that the receipt was signed by Peter Rasmussen and witnessed by John O'Mealy."

Plaintiff testified: "I live in Waller county; employed as section boss on the H. & T. C. R. R. I bought the lot from Peter Rasmussen and paid him $264 at the time, and gave note for balance. At the time of purchase I told him I would pay the note as soon as I got the money. I came to Brenham on December 7, 1876, and went to Rasmussen's bar-room to pay him the note; he said the note was mislaid, but would not trouble me any more; he would put a release on record. I had no notice that the note had been assigned.

I paid the note in 'railroad time,' and $20 over, which Rasmussen returned to me in money, and gave me a receipt for the note on the back of my deed."

In the transaction the *time checks* appear to have been considered as representing money.   There is no evidence of non-payment of them.

Referring to elementary works for the meaning of the term *payment*, we find it more extensive in signification than the appellants are willing to admit in their brief.

"The word *payment* is not a technical term; it has been imported into law proceedings from the exchange, and not from law treatises."   2 Greenl. Ev., sec. 516.   "The burden of proof (of the defense of payment) is on the defendant, who must prove the payment of money or something accepted in its stead to the plaintiff."   Id., sec. 516.

Again: "If the creditor receives the debtor's check for the amount, it is a payment if expressly received as such." 2 Greenl. Ev., sec. 520.

In Bouv. L. Dic., defining *payment*, after giving the general definition, the author adds: " By payment is understood every way by which the creditor is satisfied or ought to be, and the debtor liberated; for example, an accord and satisfaction will operate as payment."

Again: "Payment (of a debt) is not necessarily a payment in money; but that is a payment which the parties contract shall be accepted as payment."   2 Dan'l on Neg. Notes, sec. 1222, and authorities.   "A creditor may, if he pleases, accept a check in absolute payment."   Id., sec. 1623. "And whether so taken or not is question of fact for the jury."   Id., note; Blair & Hoge *v.* Wilson, 28 Gratt., 165.

In our own decisions the subject has received some attention.

In Boulware *v.* Robinson, 8 Tex., 330, was a discussion as to a payment sufficient to authorize a recovery by a surety, in a suit against his principal, for money paid.   It was held in such case that a discharge of a debt by the surety giving a negotiable note would enable him to maintain his action *for money paid.*

In Ables *v.* Lee, 6 Tex., 434, it was held that, under a plea of payment, a defendant could not show a sale of land by which one debt was discharged.

In McNeil *v.* McCamley, 6 Tex., 165, held a check not paid was not evidence of payment. But had it been paid, would it not have been otherwise?

In Robson *v.* Watts, 11 Tex., 768, "whatever is received by the creditor in satisfaction will be effective as a payment as between the creditor and his debtor."

In Cartwright *v.* Jones, 13 Texas, 1, a plea of payment held to be sustained by producing the receipt of plaintiff's attorney. In arguing, Justice Lipscomb states the more restricted rule as obtaining, "if payment had been made in something else than money, it would have been necessary to state the facts as they existed." The opinion, in commenting on Wells *v.* Fairbanks, 5 Tex., 582, says the rule is "that if a fact be pleaded, the evidence of such fact may be submitted to the jury, although not specially developed in the pleadings by a detail of all the attendant circumstances."

In Jennings *v.* Case, 17 Tex., 673, it was held "the giving of a promissory note, which has been assigned to an innocent holder, will be of equal effect with a payment of the money."

In Morphy *v.* Garrett, 48 Tex., 249, *held*, that where it appeared in evidence that a note was only taken as collateral, such fact did not sustain a plea of payment. *Quære*, would it not have been otherwise if taken absolutely?

In Life Ins. Co. *v.* Ray, 50 Tex., 518, *held*, although an agent was prohibited from taking checks in payment of premiums, yet when received and paid, such facts evidenced payment and the company was bound.

From this digest it is evident that the cases and definitions of payment treat of it according to the circumstances as (1) restricted to a literal tender and reception of money; (2) tender and reception of money, or of something representing or taken as money, or bank-notes, checks, bill of exchange, promissory notes, etc.; and (3) a satisfaction; settling the obligation by a *bona fide* transaction, whereby the creditor is satisfied and the debtor released.

Against the last sense of the word, Justice Lipscomb's remark in Cartwright v. Jones would apply.

The ordinary meaning of the term applies where anything is used in the transaction, which, from the usual course of business, is regarded as equally or approximately with money, measuring values or representing them, whether in the thing accepted or as a mode of payment.

Payment *in fact* exists when the debt is satisfied, by the tender and acceptance of something valuable received as an equivalent of or as the thing promised; but it is, as stated above, more commonly applied to dealings where money, or something representing it, or taken as such, is used.

The plaintiff's equity was based upon his alleged payment and discharge of the promissory note he was owing to his vendor. By the general term used in the petition he would be entitled to show a *bona fide* transaction between himself and his vendor, such as would commonly be described or included in its meaning. As between Buckley and his creditor anything could have been agreed upon as a satisfaction. A release, however, by the creditor on no, or an inadequate, consideration would be evidence of fraud, and would not affect the rights of the equitable owner of the debt.

In this case " *time checks* " were used in the transaction. The testimony shows that they were taken up by the railroad company on which they were drawn. They were *counted* as having certain expressed values, and were treated as representing money, or its equivalent. From the information given of *the payment*, there is testimony tending to show that these *checks*, which had defined money values, and to the full amount of the debt, were given by Buckley, and that the checks, or one of them, was actually cashed, no complaint having been made as to the others, if there were more than one.

We are satisfied that these facts were properly included under the allegation of *payment and discharge* used in the petition; and as they tended to prove the allegation, and were competent, the action of the court in admitting the testimony was not error.

It is not to be denied that had the court reached a conclu-

sion otherwise as to the sufficiency of or weight of testimony to the fact, it would not have been disturbed. But the action of the court carries presumption of correctness, and unless the record shows the finding of the court or jury manifestly without or against evidence, it will not be revised.

II. *Notice.* As to notice, actual or constructive.

It was the duty of the assignee of a non-negotiable note to promptly notify the maker of such transfer. It is even held that a transfer, save as between the payee and the indorsee, is not complete until such notice was given. Daniels on Neg. Inst., sec. 742. In this case there is no testimony that such or any notice was given or attempted to be given.

Buckley called on the payee, who by the terms of the note was the creditor, tendered him checks on the railroad; they were taken and change returned; the payee accounted for the absence of the note by saying it was mislaid, and assured Buckley that it " would not trouble him any more. He would put a release of it on record." He gave a receipt for the note indorsed on the back of the deed; and the plaintiff, Buckley, testified that he had no notice of the transfer.

We do not regard this as evidence of notice affecting the payment; in fact notice is negatived.

III. *As to estoppel.* The deed of trust described the note as payable to "Peter Rasmussen or order," authorized sale by the trustees, substitution, allowed holder to buy at the sale, and further, that " the recitals in the conveyance made to the purchaser shall be full evidence of the matters therein contained, and no other proof shall be requisite of request by the holder of said indebtedness to the trustee to enforce this trust, or of the advertisement or sale of any particulars thereof, and all prerequisites of sale shall be presumed to have been performed, and the sale, under the powers herein granted, shall be a perpetual bar against the makers of this trust deed, his heirs and associates."

The evidence showed that defendants gave $150 for the note after maturity; they had prepared the writings between

Rasmussen and Buckley. There was evidence of equivocal conduct by Rasmussen. McDonald, from whom defendants obtained the note, had claimed it. The note had been indorsed to McDonald and the indorsement canceled. There was evidence tending to show that McDonald was the equitable owner of the note. But those claims had never been made known to Buckley, and the facts do not constitute as to him an estoppel. The assignment of a non-negotiable note after maturity passed no right against any defense Buckley could set up against the original payer. The right to order sale was dependent upon the existence of an indebtedness. The debt satisfied, the power ceased. There is no error requiring reversal and the judgment should be affirmed.

AFFIRMED.

[Opinion delivered June 14, 1880.]