[Civ. No. 3960. Second Appellate District, Division One.—August 10, 1922.]

## ROGERS LAMB COMPANY (a Copartnership), Appellant, v. COAST SECURITIES COMPANY (a Corporation), Respondent.

[1] Sales — Conditional Contract — Default of Vendee—Right of Possession.—The vendor of personal property under a conditional sale contract has the right to protect his property and to take possession of it whenever he receives notice that the vendee proposes not to proceed to fulfill his obligations, or when he repudiates his contract, notwithstanding the time has not arrived when final payment might be required to be made.

[2] Id.—Resale by Dealer—Assignment of Contract—Title of Assignee.—Where an automobile dealer in possession of an automobile under a conditional sale contract executed by a security company makes a *bona fide* sale of the automobile under an installment conditional sale contract and then assigns that contract to a dealer in automobile paper, the security company will be estopped from denying to the assignee of the installment conditional sale contract all the rights which its assignment purports to carry, including the right to take possession of the automobile upon default being made in the matter of purchase payments; but where such installment condition sale contract is not *bona fide*, and does not represent an actual sale transaction, the assignee thereof gets no title or right of possession as against the security company which has legal title to the automobile.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph Musgrove and Fred O. McGirr for Appellant.

C. E. Spencer for Respondent.

JAMES, J.—Plaintiff, a copartnership, brought this action to recover possession of two automobiles. The court awarded judgment to respondent and this appeal followed.

In March, 1920, one Adams, as agent and dealer, had consigned to him a carload of automobiles. Five machines comprised the shipment. Delivery of the automobiles was conditioned upon the payment of a draft covering the pur-

chase price, which amounted to $10,315.55. Defendant corporation arranged to finance Adams, and its representative accompanied him to a suburban bank which held the invoice draft for collection. The check of defendant was given covering the full amount of the invoice. An agent of defendant accompanied Adams, checked the numbers of the motors, and saw the automobiles placed on the floor of Adams' salesroom. Under the arrangement made between Adams and defendant, the latter issued to Adams contracts of conditional sale separately covering each of the five machines. In these contracts defendant was named as the owner and seller and Adams as the purchaser, and it was recited that there had been an initial payment made of a stated amount. The remainder of the purchase price was required to be paid on July 23, 1920. The purchase price as stated for each machine was $1,856.50, and each initial payment to be $556.95. Under the terms of the contracts title was reserved in defendant as seller, and the buyer was forbidden to dispose of the automobiles or hypothecate or encumber them until they were fully paid for. An officer of defendant testified, however, that Adams was a dealer, had a place of business as such; that it was understood that he was to sell the machines. Early in June, 1920, Adams disappeared and could not be found. One of the plaintiff copartners testified in reference to that matter that Adams had "skipped out and become a fugitive from justice." Not having received payment for but one of the automobiles described in the contracts, defendant took possession of four machines, all of which were found on the premises last occupied by Adams, and all of which belonged to the shipment hereinbefore mentioned. [1] Leaving aside any question as to interfering rights of the plaintiff, which will be later referred to, it is apparent that the defendant, under its contracts with Adams, had the right to take possession of the automobiles when Adams abandoned the property, notwithstanding the time had not arrived when the final payment might be required to be made. This general right would follow, even though the contracts did not contain the term which was placed therein—that such possession might be taken in the event Adams became "financially involved or insolvent." The vendor had the right to protect his property and have possession of it when-

ever it received notice that the vendee proposed not to proceed to fulfill his obligations, or when he repudiated his contract.

It may now be considered as to whether the plaintiff acquired rights superior to those of the defendant by reason of its dealings with Adams. It has been noted that the automobiles were received at Adams' place of business and the purchase price paid by defendant on March 16, 1920. On the same day Adams presented to the plaintiff copartnership, which dealt in automobile paper, a contract wherein he (Adams) was named as seller and one Longacre as buyer, and which described one of the five automobiles hereinbefore referred to as the subject of a conditional sale made. On the face of this contract it appeared that the purchaser had made an initial payment of $1,085. The remainder of the purchase price ($1,500) was provided to be paid in monthly installments of $150. Plaintiff advanced to Adams $1,500 less insurance and brokerage charges on this contract and received an assignment of it. On March 23, 1920, Adams appeared at plaintiff's office with a similar contract, in which one Degele was named as purchaser. That contract described another of the same lot of automobiles and recited that a payment of $1,485 had been made with condition that $100 per month should thereafter be returned to the seller. An assignment of this contract was accepted by the plaintiff and Adams received therefor the sum of $1,100 less brokerage and insurance charges. The persons named as buyers in these two contracts were in default at the time the defendant took possession of the automobiles described therein, and they continued so to be up to the time that this action was commenced and thereafter.

[2] Had Adams made *bona fide* sales of the automobiles and assigned the contracts of sale to plaintiff, respondent would doubtless have been estopped from denying to plaintiff all the rights which the assignments purported to carry, including the right to take possession of the automobiles upon default being made in the matter of purchase payments. But the evidence was sufficient to support an implied finding that the contracts were not *bona fide;* that they did not represent actual sale transactions. One of the machines was never delivered to the purported purchaser (Degele) but remained at all times in the possession of

Adams. The other was used as a demonstrator by the purported purchaser (Longacre) who had worked . for Adams. Neither was registered in the name of either Longacre or Degele with the state motor department. Longacre paid no money on account. He was produced as a witness at the trial; testified that Adams had credited him for labor and some other accounts, and that he had returned the machine, after receiving it, to have the starter repaired. His testimony, together with that given by another witness who had interviewed Longacre prior to the trial, showed a situation which authorized the trial judge to discard the testimony of Longacre and draw the conclusion that that transaction was not a real one. The other purported purchaser (Degele) was not produced. He was shown to have left the country and it was also shown that he had never used the automobile which he was represented to have purchased.

The rights of appellant were measured by the contracts that it produced. Apparently the contracts were fraudulently contrived by Adams for the purpose of raising money. The fact that there were described two automobiles which were in the possession of Adams created no right in appellant to have those machines to secure the debt which grew out of Adams' fraud. Neither can it be said that a sale of the automobiles to appellant resulted as a distinct and separable matter from the assignment of the contracts of purchase. If so, such sale would be void as against creditors of Adams, for the latter had possession of the machines and did not deliver them to appellant. No such delivery was claimed ever to have been made (Civ. Code, sec. 3440). Respondent, on the other hand, had legal title to the property, as it had paid the original purchase price and received delivery by its agent.

It was not error to admit in evidence the written contracts executed by Adams in favor of the defendant. It appeared in evidence that at the end of sixty days after the machines were delivered to Adams and paid for by the defendant, renewal contracts were made which were identical with the first ones executed except that the amounts were reduced by ten per cent. The secretary of defendant corporation testified that the old or first contracts were given back to Adams when the renewal instruments were

executed. By the testimony of plaintiff's own witness it appeared that Adams had "skipped out" and was a fugitive from justice. The objection, therefore, that the defendant should have produced the original contracts and not have been allowed to prove their contents by comparison with the renewal contracts, is not well taken. Presumptively, it would be considered that Adams either had taken the first contracts with him or that he had destroyed them. No further contention is made on behalf of appellant which requires consideration.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.