[Civ. No. 3627. Second Appellate District, Division Two.—October 25, 1922.]

## GEORGE S. CARTER, Appellant, v. A. M. ROWLEY, Respondent.

[1] SALES—DELIVERY OF AUTOMOBILE TO SECOND-HAND DEALER—SALE TO INNOCENT PURCHASER.—Where the owner of an automobile, knowing that a certain dealer is engaged in the business of selling second-hand cars, delivers his machine to said dealer for the purpose of finding a purchaser, he thereby clothes said dealer with such *indicia* of authority to sell the car as usually accompanies such authority according to the custom of trade and the general understanding of business men; and he cannot recover the machine from an innocent purchaser from said dealer on the latter's premises, even though said dealer exceeded his authority in making the sale.

[2] ID.—AUTHORITY TO SELL—NOTICE—KNOWLEDGE OF OWNERSHIP.—While the fact that the purchaser of the automobile from said second-hand dealer was told by the latter that it was necessary to have the transfer on the back of the certificate of registration signed by plaintiff, in whose name, as the legal owner, the automobile was registered, was sufficient information to apprise him of plaintiff's ownership of the automobile, that information was not alone sufficient to charge him with notice that plaintiff had not authorized said second-hand dealer to make a sale of the automobile.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge. Affirmed.

The facts are stated in the opinion of the court.

George S. Carter, *in pro. per.*, and Chester H. Van Winkle and Wilton W. Webster for Appellant.

Wright & McKee for Respondent.

FINLAYSON, P. J.—This is an action to recover an automobile, or its value—alleged to be $600—together with damages for its detention. From a judgment in favor of defendant plaintiff appeals, contending that the uncontradicted evidence shows him to be entitled to the automobile and that the findings to the effect that he is neither the

owner nor entitled to possession are not supported by the evidence.

[1] Robert J. McNabb was engaged in the business of selling second-hand cars at Lamada Park, in Los Angeles County. Some time between the 16th and 20th of June, 1920, plaintiff left his car with McNabb for the purpose of finding a purchaser. McNabb sold and delivered it to defendant. Plaintiff, claiming that McNabb exceeded his instructions, and that, therefore, the title to the car did not pass to defendant, claims the right to redelivery.

The further facts, so far as they are pertinent to the inquiry, are substantially as follows: McNabb testified that he is "a garageman and a used-car agent"; that at the times in question he was in the used-car business—selling used cars, both his own and those belonging to other persons which were left on consignment with him; that the cars were usually displayed on his sales lot and sometimes inside his garage; that the garage was used for the making of repairs and for the storage and display of cars; that it was used for the storage of his own cars and of such cars as were left with him by others to be sold; and that he was not in the storage business. His testimony that he was not in the storage business is corroborated by that of his bookkeeper, who testified that so far as he knew McNabb never did a storage business. It thus will be seen that, though McNabb testified that he was a "garageman," the only business in which he was engaged was that of selling second-hand cars, and that he did not have a garage for carrying on the business of storing other persons' cars, but that he used his garage solely for his own convenience in storing his own cars and such cars as were left with him for sale.

Some time between the 16th and 20th of June, 1920, plaintiff drove his car to McNabb's place of business, exhibited it to McNabb and instructed the latter to try to find a purchaser at a price which would net plaintiff $575. Plaintiff told McNabb that if he found a purchaser who would pay $575 net, "bring him to me and I will sign the necessary license transfer and anything else that is necessary for the completion of the sale." On the following day plaintiff left his car with an employee of McNabb on or near the latter's premises. Plaintiff testified that he took the car there in order that McNabb might find a purchaser

for it.   On June 26, 1920, plaintiff's car, along with a number of other second-hand machines on exhibition for sale, was on display in McNabb's vacant lot.   While thus on display it was sold and delivered by McNabb to defendant for $615.   It seems that McNabb embezzled all of the purchase price which defendant paid for the car, or at any rate converted the money to his own use.   Hence this action by plaintiff to regain possession of the car or to recover its value.

McNabb, when he sold the car to defendant, did not claim to be the owner.   Defendant unquestionably knew that the car was owned by plaintiff; but we think the evidence shows that defendant was led to believe, and that he did believe, that McNabb was authorized by plaintiff to sell the car, and that for that purpose McNabb was possessed of all the authority of a factor.   That is, defendant, it would seem, was led to and did believe that McNabb was an agent who, in the pursuit of his independent calling as a dealer in second-hand cars, was employed by plaintiff to sell the car for him, and that for that purpose McNabb was vested by plaintiff with the possession and control of the car and was authorized to receive payment of the purchase price.

McNabb gave defendant a bill of sale for the car, made out in his own name as the seller.   This he undoubtedly would have had the right to do had the car been delivered to him with authority to sell it for plaintiff, for in that event he would have been a factor; and it unquestionably is the rule that, in the absence of usage or instructions to the contrary, a factor may sell in his own name the property which is intrusted to him for sale.   (25 C. J., p. 250.)

Plaintiff never signed any statement of transfer indorsed on the certificate of registration which had been issued to him by the state motor vehicle department.   It seems that at the time when McNabb sold the car to defendant, the latter, in compliance with the State Motor Vehicle Act, signed a statement of transfer as the transferee, and was told by McNabb that he (McNabb) would take the registration certificate to plaintiff and have the latter sign the statement of transfer as the transferor.   Defendant, accordingly, after having signed the statement of transfer as the transferee, left the certificate of registration with McNabb for the purpose of having him take it to plaintiff to secure

the latter's signature to the transfer statement. It is probable that McNabb forged plaintiff's name to the statement of transfer; for defendant in due time received from the state motor vehicle department through the United States mail a certificate of transfer. This could have been regularly issued only when signed by plaintiff, as the transferor, as well as by defendant, as the transferee.

Upon these facts we think that defendant has acquired an unimpeachable title to the car, notwithstanding that plaintiff's instructions to McNabb were ''to find a purchaser,'' and notwithstanding that plaintiff, when he agreed to leave the car with McNabb, said to the latter, ''When you find a purchaser for this car who will pay me $575 net, you bring him to me and I will sign the license transfer and *anything else* that is necessary for the completion of the sale of the car.'' For the purpose of this decision we shall assume that this language was tantamount to an instruction to McNabb to do no more than merely to seek a purchaser, and if one were found to report the offer to plaintiff. If this be the proper construction to be placed upon plaintiff's instructions to McNabb, then it unquestionably may be conceded that McNabb had no *actual* authority to sell plaintiff's car. An agent does not possess an *actual* authority to sell if he is merely given the property to seek a purchaser and report the offer to his principal. (*Levi* v. *Booth,* 58 Md. 305 [42 Am. Rep. 332].) But though McNabb may have been given no actual authority to sell, we think that plaintiff by his acts clothed him with an apparent or ostensible authority.

As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus has enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his authority. (*Wilcox-Rose Construction Co.* v. *Evans,* 9 Cal. App. 121 [98 Pac. 83].) The nature and extent of this exception to the general rule that a purchaser gets no title if his vendor has none, or if the vendor has no authority from the owner, are very clearly stated in the opinion of Senator Verplanck in *Saltus* v. *Everett,* 20 Wend.

(N. Y.) 278 [32 Am. Dec. 547]. After some remarks on the transfer of notes, bills, etc., the learned author of that opinion says: "After a careful examination of all the English cases, and those of this state, that have been cited or referred to, I come to this general conclusion, that the title of property in things movable can pass from the owner only by his own consent and voluntary act, or by operation of law; but that the honest purchaser who buys for a valuable consideration in the course of trade, without notice of any adverse claim, or any circumstances which might lead a prudent man to suspect such adverse claim, will be protected in his title against the original owner in those cases, and in those only, where such owner has by his own direct, voluntary act conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property, as owner, or of disposal as an agent. I find two distinct classes of cases under this head, and no more." After stating the first of these classes, the opinion proceeds: "The other class of cases in which the owner loses the right of following and reclaiming his property is where he has, by his own voluntary act or consent, given to another such evidence of the right of selling his goods as, according to the custom of trade, or the common understanding of the world, usually accompanies the authority of disposal; or, to use the language of Lord Ellenborough, when the owner 'has given the external *indicia* of the right of disposing of his property.' Here it is well settled that, however the possessor of such external *indicia* may abuse the confidence of his principal, a sale to a fair purchaser divests the first title, and the authority to sell, so conferred, whether real or apparent, is good against him who gave it." The question in cases belonging to both classes is: Has the real owner intentionally conferred on the vendor the apparent ownership or the apparent right of selling? If he has, the purchaser is protected; otherwise not.

Mere possession, it is true, even by one who happens to be a dealer in the same class of goods, is not sufficient evidence of ownership or of authority to sell to protect one who purchases from the possessor. (*Covill* v. *Hill*, 4 Denio (N. Y.), 323; *Linnen* v. *Cruger*, 40 Barb. (N. Y.) 633; *Wilson* v. *Mason*, 4 Bosw. (N. Y.) 155; *Case* v. *Jennings*, 17 Tex. 661. See, also, *Pacific Acceptance Corp.* v. *Bank*

*of Italy, ante,* p. 76 [209 Pac. 1024], and *Levi* v. *Booth, supra.*) But where, in addition to possession by the vendor, the owner has given such evidence of authority to sell as usually accompanies such authority according to the custom of trade, or the general understanding of business men, then, as was stated by Mr. Justice Field in an early California case—*Wright* v. *Solomon,* 19 Cal. 76 [79 Am. Dec. 196]—the vendor's possession under such circumstances is evidence, not that he is the owner, but that he has received authority from the owner to sell. (*Heath* v. *Stoddard,* 91 Me. 499 [40 Atl. 547] ; *Pickering* v. *Busk,* 15 East (Eng.), 38. See, also, *Galbraith* v. *Weber,* 58 Wash. 132 [28 L. R. A. (N. S.) 341, 107 Pac. 1050] ; and note to *Velsian* v. *Lewis,* 3 Am. St. Rep. 201.) "If the principal," says Lord Ellenborough in *Pickering* v. *Busk, supra,* "send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale? Or if one send goods to an auction-room, can it be supposed that he sent them thither merely for safe custody? Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal will be bound, and the purchaser safe." And in the same case Judge Bayley, in a concurring opinion, states the rule as follows: "It may be admitted that the plaintiff did not give Swallow any express authority to sell; but an implied authority may be given; and if a person put goods into the custody of another whose common business it is to sell, without limiting his authority, he thereby confers an implied authority upon him to sell them."

The principles governing this case are well stated by the supreme judicial court of Maine in *Heath* v. *Stoddard, supra:* "A principal is not only bound by the acts of his agent, whether general or special, within the authority which he has actually given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing (1 Am. & Eng. Ency. of Law, 2d ed., p. 969, and cases

cited).   Whether or not a principal is bound by the acts
of his agent, when dealing with a third person who does not
know the extent of his authority, depends, not so much
upon the actual authority given or intended to be given by
the principal, as upon the question, what did such third
person, dealing with the agent, believe, and have a right to
believe, as to the agent's authority from the acts of the
principal?   (*Griggs* v. *Selden,* 58 Vt. 561 [5 Atl. 504];
*Towle* v. *Leavitt,* 23 N. H. 360 [55 Am. Dec. 195]; *Walsh*
v. *Hartford Ins. Co.,* 73 N. Y. 5.)   For instance, if a per-
son should send a commodity to a store or warehouse where
it is the ordinary business to sell articles of the same nature,
would not a jury be justified in coming to the conclusion
that, at least, the owner had by his own act invested the
person with whom the article was intrusted with an appar-
ent authority which would protect an innocent purchaser?''

Let us now apply these principles to the present case.
Plaintiff, who employed McNabb as his agent to find a pur-
chaser, voluntarily left his car with McNabb, a dealer in
second-hand cars—the so-called ''garage'' being but a
building in which McNabb stored the second-hand cars
which were held by him for sale.   His premises were sur-
rounded by conspicuous signs advertising to the world that
his business was that of selling used cars.   Plaintiff testi-
fied that he knew McNabb's line of business.   With this
knowledge he left his car with McNabb in order that the
latter might find a purchaser for it.   McNabb was more
than a mere bailee; he was plaintiff's agent to find a pur-
chaser.   Whatever may have been the private arrangement
between plaintiff and McNabb, whatever the latter's *actual*
authority may have been, plaintiff, by his own voluntary
act, clothed McNabb with such *indicia* of authority to sell
the car as usually accompanies such authority according to
the custom of trade and the general understanding of busi-
ness men.

We find nothing in any of the authorities cited by appel-
lant which conflicts with these views.   A case which at first
blush might seem to give some color to appellant's position
is *Levi* v. *Booth, supra.*   But in that case the purchaser
had notice of his vendor's want of authority to sell.   It is
recited in the opinion that ''proof was given that before
such alleged sale, Henry Levi [the purchaser] had been

informed that the ring belonged to the plaintiff [the owner], and that DeWolf [in whose possession the ring had been placed by the owner] had no power or authority to sell it." Nor is there anything in *Pacific Acceptance Corp.* v. *Bank of Italy, supra,* which conflicts with our conclusions. In that case the true owner of the truck, the defendant in the action, did nothing which could have misled the plaintiff, the innocent purchaser from Peniston. All that the owner did was to permit the truck to be used in certain work, together with other trucks which were being used by the purchasers thereof on the same job. Unlike the plaintiff here, the true owner in that case had not brought its property to such a place and in such a way as to exhibit an apparent purpose of sale.

[2] Appellant claims that respondent was placed upon notice when he learned from McNabb that the statement of transfer on the back of the certificate of registration was not signed by appellant as the transferor. Section 8 of the Motor Vehicle Act provides: "Upon the transfer of ownership of any motor vehicle, the person in whose name such vehicle is registered and the person to whom ownership of such vehicle is to be transferred shall forthwith join in a statement of said transfer indorsed upon the reverse side of the certificate of registration of said motor vehicle in the space provided for said purpose, which statement shall be signed by the transferor and the legal owner in the manner and form of his signature contained on the face of said certificate, and which statement shall likewise be signed by the transferee, who shall also set forth below his signature his postoffice address." We fail to see how the fact that defendant was told by McNabb that it was necessary to have the transfer signed by plaintiff, in whose name, as the legal owner, the car was registered, is a circumstance which might lead defendant, as a prudent man, to suspect that McNabb had not been authorized to consummate a sale of the car. Such information would, of course, apprise defendant of plaintiff's ownership, but it would not alone suffice to charge him with notice that plaintiff had not authorized McNabb to make a sale. The language of the Motor Vehicle Act is that the person in whose name the vehicle is registered shall join in a statement of transfer "*upon* the transfer of ownership of any vehicle"—not *before* the transfer of ownership.

And though the act declares that delivery of the vehicle "shall be deemed not to have been made" and the title "shall be deemed not to have passed" until the transferee shall have received from the motor vehicle department a new registration certificate, it is quite obvious that if McNabb had in fact been actually authorized by plaintiff to sell the car, plaintiff could not have defeated the transfer of title by contumaciously refusing to join in a statement of transfer. The information communicated to defendant by McNabb was not sufficient to lead the former to suspect that McNabb did not possess authority to do everything necessary to effect a transfer of title up to that point where nothing remained but the securing of plaintiff's signature to the statement of transfer.

The judgment is affirmed.

Works, J., and Craig, J., concurred.