[Civ. No. 160. Fourth Appellate District.—January 16, 1931.]

CALIFORNIA STANDARD FINANCE CORPORATION (a Corporation), Appellant, v. RIVERSIDE FINANCE COMPANY et al., Respondents.

Rollinson, McGann, Becker & Nelson, Charles W. Rollinson and Don S. Irwin for Appellant.

Leonard J. Difani for Respondents.

WARMER, J., *pro tem.*—The facts out of which this action arose are briefly as follows: W. H. Jennèr and Ethel L. Sampson, sued herein as Mrs. Edyth Sampson, were doing business under the fictitious name of Paige Sales & Service Company in Riverside, California, hereinafter called the dealer. The dealer made an arrangement with the appellant whereby appellant was to finance certain automobiles for the dealer. Under this plan, the appellant was to take the title to the automobiles financed by them from the distributors in Los Angeles, then sell said automobiles to the dealer on conditional sale contracts, hereinafter called flooring contracts. The automobiles were then to be driven by the dealer to Riverside, where the dealer had his place of business. The dealer secured possession of the two automobiles here in question, a Paige sedan, motor No. 171428, and a Paige sedan, motor No. 171994, hereinafter referred to as the Sturgis car and the McKay car, respectively.

The Sturgis car was delivered to the dealer on November 22, 1927, and the McKay car on February 21, 1928. Each of said cars was covered by one of said flooring contracts. The dealer sold the Sturgis car to Dorothy Sturgis under a conditional sale contract February 25, 1928, and the McKay car to Jack P. McKay on February 27, 1928. On or about February 27, 1928, the dealer assigned these contracts to Riverside Finance Company, hereinafter referred to as respondent. The initial payments on the flooring contracts were made. No other or further payment was made by the dealer or by anyone in his behalf. The initial payment on the Sturgis contract was made in cash. McKay was a salesman for the dealer and the initial payment on the McKay car was made by a credit adjustment. No other or further payments were made on the conditional sale contracts to the dealer by either Sturgis or McKay or anyone else in their behalf.

On March 8, 1928, both of these automobiles were repossessed by respondent, although no further payments under the contracts were due until March 25th and March 27th, respectively. The facts surrounding the repossession of the cars are, that on or about March 8, 1928, an attachment was levied on the place of business of the dealer and both Sturgis and McKay notified the respondent herein that they would be unable to make the payments provided

for in the contract and that respondent had better take the cars; which was done by respondent. At the time of the execution of the Sturgis and McKay contracts, the dealer was in default under the flooring contracts which were still held by appellant. Soon thereafter, the appellant instituted this action in claim and delivery, and while the cars were in the possession of the respondent. A further detail of facts will appear in the course of the opinion.

The court's findings are in detail, but in effect find that the appellant is estopped to assert its title as against the respondent herein; that the. respondent is the owner of the automobiles in question. It is now conceded by the parties that judgment is based upon an estoppel *in pais* arising out of an *indicia* of ownership with which the dealer was clothed by the appellant and by which the respondent was misled and induced to purchase the said automobiles. The title to the automobiles here in question was vested in the appellant. (*Pacific Finance Corp.* v. *Hendley,* 103 Cal. App. 335 [284 Pac. 736].) The title being vested in the appellant and the dealer being in default under the terms of the conditional sale contract by which he secured the right of possession, the appellant must prevail, unless it is estopped to assert such right because of certain acts or omissions on its part. In the case of *Pacific Finance Corp.* v. *Hendley, supra,* at pages 736, 737, of 284 Pac. the court said: "It is well settled in this State that the owner of personal property may make a conditional sale of the same and deliver possession thereof, reserving the title thereto until payment of the agreed price, which title will be superior to that of a subsequent purchaser or mortgagee without notice of the reservation. (*Oakland Bank of Savings* v. *California P. B. Co.,* 183 Cal. 295, 297 [191 Pac. 524].) It is equally well settled that if personal property is delivered under a conditional sale contract, to a buyer who is engaged in the business of selling property of the same kind and, with the knowledge of the seller, is placed on display for sale with such other property, the holder of the reserved title is estopped to assert it against a *bona fide* subvendee for value. (Civ. Code, sec. 1142; *Democrat-Herald Pub. Co.* v. *Pettit,* 94 Cal. App. 724 [271 Pac. 910]; *General Securities Corp.* v. *Reo Motor Car Co.,* 91 Cal. App. 16 [266 Pac. 576]; *State Finance Co.* v. *Issaacson,* 86 Cal. App. 113 [260 Pac.

580] ; *Rapp* v. *Fred W. Hauger Motors Co.*, 77 Cal. App. 417 [246 Pac. 1067] ; *Anglo-California Trust Co.* v. *Pacific Acceptance Co.*, 70 Cal. App. 41 [232 Pac. 489] ; *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267].) In such a case the rights of the innocent subvendee 'do not depend upon the actual title or authority of the party with whom he deals directly but are derived from the act of the real owner, which precludes him from disputing as against the innocent party the existence of the title or power which, through negligence or mistaken confidence, he has caused or allowed to be vested in the party making the sale'."

The existence of estoppel is a question of fact. (*Parke* v. *Franciscus*, 194 Cal., at 297 [228 Pac. 435] ; *DiNola* v. *Allison*, 143 Cal. 106 [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976].) In *Carter* v. *Rowley*, 59 Cal. App. 486, at page 490 [211 Pac. 267, 269], the court said: "Mere possession, it is true, even by one who happens to be a dealer in the same class of goods, is not sufficient evidence of ownership or of authority to sell to protect one who purchases from the possessor. (*Covill* v. *Hill*, 4 Denio (N. Y.), 323 ; *Linnen* v. *Cruger*, 40 Barb. (N. Y.) 633 ; *Wilson* v. *Nason*, 4 Bosw. (N. Y.) 155 ; *Case* v. *Jennings*, 17 Tex. 661. See, also, *Pacific Acceptance Corp.* v. *Bank of Italy*, 59 Cal. App. 76 [209 Pac. 1024], and *Levi* v. *Booth*, [58 Md. 305, 42 Am. Rep. 332].) But where, in addition to possession by the vendor, the owner has given such evidence of authority to sell as usually accompanies such authority according to the custom of trade, or the general understanding of business men, then, as was stated by Mr. Justice Field in an early California case—*Wright* v. *Solomon*, 19 Cal. 76 [79 Am. Dec. 196]—the vendor's possession under such circumstances is evidence, not that he is the owner, but that he has received authority from the owner to sell."

Inasmuch as the holder of the reserved title is estopped to assert it against a *bona fide* vendee for value, it becomes necessary to determine, in the case at bar, whether or not the respondent is a *bona fide* purchaser for value, which gives rise to the inquiry—what are the rights of the purchaser of a conditional sale contract, or contracts, from a dealer whose only right to the property is the right of purchase under a conditional sale contract? The rights of such a purchaser (respondent herein) are measured by the

contract which is presented. (*Rogers Lamb Co.* v. *Coast Securities Co.*, 58 Cal. App. 744 [209 Pac. 246].) ■ By the assignment of the conditional sale contracts by the dealer to the respondent, it acquired all of the rights in the property possessed by the dealer, and upon default under the terms of the contract, would have the right to repossess the Sturgis and McKay cars and terminate the contract, thereby succeeding to all of the rights of McKay and Sturgis in and to the property described in the contracts. The vendees McKay and Sturgis voluntarily consented to the repossession of the automobiles by the respondent and to the termination of all their rights under the said contracts. We can see no reason why the respondent would not thereby succeed to all of the rights of the vendees therein, to the same extent and for all purposes that it would have succeeded had the repossession been accomplished by some process of law. It therefore becomes pertinent and necessary to determine what were the rights of Sturgis and what were the rights of McKay under the conditional sale contract. ■ In other words, were the conditions under which each of them purchased the automobiles from the dealer such as to work an estoppel as against the dealer's vendor under the conditional sale contract? If so, then the appellant is estopped to assert his reserved title as against the respondent, said respondent's rights being measured by the terms of the contract he presented.

Mr. Coffman, a department manager for the appellant herein, who conducted negotiations on behalf of appellant with the dealer, testified in part as follows: "(Question by Mr. Difani): I will ask you if, in your experience as an automobile man, and one who has a great deal of experience —how long have you been with the company? A. With the company about a little over two and a half years. Q. During that time, I will ask you, in your experience, if you don't know whether it is a fact that dealers, as such, use their cars as demonstrators? . . . (Mr. Difani): Just a moment; he has stated that he did not know until he was informed by Mr. Jenner late in March, that Mr. Jenner was using his cars off the floor as demonstrators, and I am asking him a general question—whether or not he knew that dealers, such as the Paige Sales & Service, used their cars as demonstrators. . . . A. No, I don't know. of any

finance company that will allow a dealer to use floor cars as demonstrators; we have demonstrator contracts that can be entered into by companies, by permission. . . . (Question by Court): Was that done in this case? A. Yes, we had demonstrator contracts with Mr. Jenner, but not on these two cars. The Court: That is what I mean—in this case. A. No. . . . Q. (Mr. Difani): Now, did you know, Mr. Coffman, when Mr. Jenner, for the Paige Sales & Service Company, purchased these cars, he was purchasing them from you for resale to the public? Mr. Irwin: We object to that, immaterial. The Court: Overruled. A. Yes. Q. You knew that he was taking those cars from Los Angeles, from the storeroom or factory or branch, whatever it might be, the Paige Company of California, and driving those cars down here to Riverside? A. Yes, sir. Q. Did you ever come down here and make any investigation to find out whether or not they were sitting on his floor, or being driven around? Mr. Irwin: We object to that, incompetent, irrelevant, immaterial. . . . The Court: Overruled. . . . A. No, sir. Q. (Mr. Difani): As far as you knew, then, after Mr. Jenner got these cars from the Paige people in Los Angeles and drove them up from there, your interest in them ceased as far as the use of those cars was concerned, if Jenner kept his contract payments up? A. No, sir.''

Mrs. Ethel Sampson, one of the members of the copartnership of the Paige Sales & Service Company, testified that in January she knew that the cars were being financed by someone and thought they were all financed by appellant herein, but she knew the cars were being driven by Mr. Jenner or some representative of the Paige Sales & Service Company from the Paige branch in Los Angeles to their place of business in Riverside; that the cars were being operated by those in the employ of the Paige Sales & Service Company, salesmen and herself. She went to the appellant's office in Los Angeles and asked for the manager. A gentleman who resembled Mr. Coffman appeared and she told him who she was—that she was connected with Mr. Jenner in the Graham-Paige agency in Riverside—and the gentleman informed her that he was the one who handled that line of business and would talk to her. She asked a number of questions and he refused to answer. She told him the cars were being continuously driven and was in-

formed by him that they were doing business with Mr. Jenner and that she was interfering.

"In examining the sufficiency of evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony . . . is to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1057, 1058].)

It appears, without conflict, that under the arrangement between the appellant and dealer herein, the distributing agency for the Graham-Paige automobiles was paid for the cars by the appellant for and on behalf of the dealer; that at the time said payment was made the appellant herein took title to the said automobiles and sold them to the dealer on a conditional sale contract, reserving title thereto in the appellant; that Mr. Coffman, department manager of appellant, knew that the cars were driven from the agency in Los Angeles, where they had been purchased, to Riverside; that the dealer maintained a regularly established place of business for the sale of new cars in the city of Riverside; that said Coffman knew that said cars were purchased for resale by the dealer. The conditional sale contract under which the dealer secured possession of the cars from the appellant herein provided, among other things, that: "The purchaser agrees not to sell, attempt to sell, lease, mortgage, hypothecate or otherwise dispose of said personal property or take the same out of the State of California, during the life of this contract, and the purchaser further agrees not to assign this contract, or any of his rights hereunder, and any assignment of this contract or any of the purchaser's rights hereunder, without the consent of the seller, by the purchaser, or by execution or other legal process, or otherwise, or the transfer thereof by process of law, or otherwise, shall at the option of the seller, terminate all rights hereunder to purchase said personal property. The purchaser agrees not to use or permit said personal property to be used for hire."

It is admitted that the dealer sold the two cars here in question on conditional sale contract to Sturgis and

McKay; that Miss Sturgis was a resident of the city of San Bernardino and there is no evidence as to whether or not she ever saw the car purchased by her at the dealer's place of business or knew anything about the dealer's business, or whether the automobiles were driven or not. However, it does appear that a salesman of the dealer took her to the office of the dealer and she executed the contract at the dealer's place of business. In *General Securities Corp.* v. *Reo Motor Car Co.,* 91 Cal. App. 16, at page 19 [266 Pac. 576, 577], the court said: "Where the owner of the property clothes another with the apparent title to or power of disposition over it, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner in such case is estopped from afterward asserting his title. (*Chace* v. *Whitmore,* 68 Cal. 545 [8 Pac. 942].)" See, also, *Western States Acceptance Corp.* v. *Bank of Italy,* 104 Cal. App. 19 [285 Pac. 340].

The burden rests upon a party asserting an estoppel to prove all of the elements constituting it (10 Cal. Jur. 656). Manifestly, Miss Sturgis could not be induced to deal with the dealer as an apparent owner by any fact or circumstance not within her knowledge or information. Mere possession of an automobile by a dealer is insufficient to establish an estoppel against a vendor in favor of a purchaser (*Carter* v. *Rowley, supra*). Does the fact that Miss Sturgis was taken to the dealer's place of business by a salesman of the dealer and there executed a conditional sale contract for the purchase of the automobile, coupled with the fact of the possession of the automobile by the dealer, constitute facts sufficient to work an estoppel in her favor as against the appellant herein?

*Western States Acceptance Corp.* v. *Bank of Italy et al., supra,* is a case where the Acceptance Corporation paid for an automobile for the dealer and, as a part of the same transaction, the dealer executed a trust receipt in favor of the Acceptance Corporation, agreeing to hold the automobile in trust as the property of the Acceptance Corporation. The dealer agreed not to sell, encumber or otherwise dispose of same except upon written consent of the Acceptance Corporation. The dealer sold the automobile to another dealer for cash. The purchasing dealer had no actual notice of ownership, or of possession, or any interest in the same

by the Acceptance Corporation. The purchasing dealer sold the automobile on a conditional sale contract to one Mrs. Kennon and then sold the contract to the Bank of Italy. The purchasing dealer caused the automobile to be registered with the motor vehicle division and a white certificate was issued to Mrs. Kennon as registered owner and a pink certificate to the Bank of Italy as legal owner. The Acceptance Corporation, upon learning these facts, brought suit in replevin. On page 599, the court said: "There. can be no question that the evidence clearly establishes an estoppel. . . . The duty rests upon one financing a retail dealer to see to it that cars upon which he has a lien or other interest are not left under the domain or control of such sale dealers on his salesroom floor, to be offered to the public. Secret arrangements which place it in the power of a dealer to deceive unsuspecting purchasers should be and they are condemned. (*General Securities Co.* v. *Reo Motor Co., supra.*) Whether, therefore, plaintiff had or had not any interest in the car is unimportant, for if it had, it negligently permitted Ballard, a known automobile dealer in this make of cars, to appear as apparent owner with the right of selling the same and it should therefore be estopped from asserting its alleged title as against respondents, who are innocent purchasers without notice. Where one of two innocent purchasers must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."

In the case at bar, as in the *Western States Acceptance Corp.* v. *Bank of Italy et al., supra,* the appellant did nothing to protect innocent purchasers and under the circumstances disclosed herein, it is estopped to assert its title against the respondent herein.

█ Mr. McKay, the purchaser under conditional sale contract of the McKay car, was a salesman or sales manager for the dealer. He knew that some of the cars purchased from the Graham-Paige agency were purchased under flooring contracts executed by the dealer in favor of the appellant herein. To quote his testimony:

"Q. (Mr. Difani) Until that day (referring to the day that the respondent herein took possession of the McKay car) you knew, did you not, Mr. McKay, that this car was

floored there by the California Standard Finance Company?
A. No;— Well, I had an idea it was, yes. Q. (Mr. Difani)
Well, do you know? The question is—do you know, Mr.
McKay? A. Not positively; no. Q. (Mr. Rollinson) You
knew, did you not, Mr. McKay, that the California Standard
Finance Company had been flooring other cars? A. Had
floored some, I don't know that they floored them all.
Q. (Mr. Difani) Now, Mr. McKay, you said that you didn't
recall using the car after you purchased it? A. Um-huh.
Q. Can you state how that happened? A. Well, we didn't
have many on the floor to show, we only had the two new
cars. Q. Then, as a salesman, was there an agreement be-
tween you and Mr. Jenner that the car would be left on
the floor, after you purchased it, for display purposes?
A. No, that was more or less all of my own idea, no part of
the sales—. Q. You used your car later on to take some-
body else—? A. Yes."

It appears from the above quoted testimony that McKay
was in possession of enough information to have placed him
upon inquiry as to the exact condition of the title to said
car. If that be true, then he could not assert an estoppel
as against the vendor of the dealer herein. (*Rogers Lamb
Co.* v. *Coast Securities Co.*, 58 Cal. App. 744 [209 Pac. 246];
*General Securities Corp.* v. *Reo Motor Car Co., supra.*)
Therefore, the appellant is not estopped from asserting its
title as to the McKay car.

The respondent further urges that because of the
fact that appellant did not register said automobile with
the state motor vehicle division that it failed in a duty im-
posed by law and hence is estopped to assert its title to
said automobiles as against respondent. It is admitted that
there was no registration made of either of the cars with the
state motor vehicle division until the dealer caused the same
to be registered, and a white certificate was issued to Miss
Sturgis and to Mr. McKay, as registered owners of the auto-
mobiles respectively, and to the respondent as the legal
owner of each of said automobiles. It appears that the
Graham-Paige agency in Los Angeles was the distributor
of Paige automobiles in the district in which the dealer was
doing business. It further appears that the appellant herein
did not sell the said automobiles for the purpose of being
operated upon the public highways of this state. In fact,

by the contract of the appellant herein with the dealer it appears that such was not to be done. We quote from the contract: ''The purchaser hereby agrees not to drive or cause to be driven, or otherwise operate, the motor vehicle herein described without the written consent of the seller.''

Section 36 of the Motor Vehicle Act, subdivision a, defines what vehicles are to be registered under the Motor Vehicle Act, and reads as follows: ''Every owner of a motor vehicle . . . which shall be operated upon the public highway of this state shall for each such vehicle owned, except as herein otherwise provided, apply to the division for the registration thereof.'' (Stats. 1927, p. 1423.)

It appears from the said section that no registration of new automobiles is required under the terms of said act except those which are to be operated upon the public highways of this state. Section 45 of said act, subdivision a, provides upon the transfer of title or interest of a legal owner, certain records must be made and sent to the state motor vehicle division. Subdivision b requires that the transferee shall forward both the certificate of ownership, so indorsed, and the certificate of registration to the division. Subdivision c provides that subdivision b of this section requiring a transferee to forward the certificate of ownership, after indorsement, and the certificate of registration to the division shall not apply to the transferee of a vehicle not intending to and who does not drive such vehicle or permit such vehicle to be driven upon the public highway, etc. Subdivision e of said section provides that until said division shall issue said new certificate of registration and certificate of ownership, as hereinbefore provided in subdivision d, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose. Section 45½ of said act, subdivision b, provides for the giving of notice of sale and transfer as follows: ''Every dealer, upon transferring a motor vehicle . . . whether by sale, lease or otherwise, to any person other than a dealer, shall immediately give written notice of such transfer to the department, etc.''

Section 46 of said act permits the manufacturer or dealer in motor vehicles, having an established place of business in

this state, owning any such new vehicles and operating them upon the public highways exclusively for the purpose of testing, demonstrating or selling the same, in lieu of registering each such vehicle, may secure from the state department what is commonly known as driver's symbols or dealer's numbers. It further provides, in subdivision d thereof, that it shall be permissible for such manufacturer or dealer to operate any such vehicle without number plates attached thereto from any vessel, railroad depot or warehouse over the public highways, to the salesrooms or other place of business of such manufacturer or dealer, or to a warehouse or other place of storage under a written permit authorizing such operation first obtained from the police authorities.

It therefore appears that the only automobiles required to be registered under the California Motor Vehicle Act (Stats. 1927, p. 1424), are the vehicles to be used upon the public highway. The distributing agency in Los Angeles, therefore, was not required by said act to register new automobiles in their possession not to be used upon the public highway. Appellant herein, when securing the title to said automobiles, did not procure them to be operated upon the public highway by appellant, and the dealer, by its contract with the appellant herein, expressly agreed not to operate said automobiles upon the public highway. It therefore appears that no registration of said automobiles was required by the said Motor Vehicle Act unless the fact that the appellant acquiesced in the dealer driving the said automobiles from the distributing agency in Los Angeles to his place of business in Riverside, California, with the dealer's license number displayed thereon, was such a use of said automobiles upon the public highway as to require a registration thereof. This we do not believe was such a use as to require registration of said automobiles under the Motor Vehicle Act. It will be observed that the apparent intent of the legislature was to permit the moving of motor vehicles from one dealer's place to another and from warehouse to storage without the necessity of registration of the car so moved. (Sec. 46, *supra*.) The appellant therefore owed no legal duty to the respondent or anyone else to cause the registration of said automobiles with the state motor vehicle division and is therefore not estopped,

because of failure to register said automobiles, to assert its title.

The appellant further urges that the pleadings are insufficient to present an issue in estoppel. The respondent in answer thereto insists that under the circumstances presented here it is not necessary to plead an estoppel and relies upon the rule announced in the case of *Kenny* v. *Christianson*, 200 Cal., p. 419 [50 A. L. R. 1297, 253 Pac. 715]. The rule is there declared on page 424: "In making this contention plaintiff relies upon the familiar rule that the defense of an equitable estoppel is one which must be pleaded. This rule, however, has only application to cases wherein the plaintiff bases his sole reliance for his recovery in said action upon a claim of title which he is estopped to urge. Where, however, a plaintiff, as in this case, bases her alleged right of recovery in the first instance. upon the original claim of ownership of the property in question and upon her contention that the person through whom the defendant acquired title to said property had no authority from her to dispose of the same, the defendant is not required in his pleadings to anticipate such other contentions as the plaintiff may seek to rely upon when her main reliance for her right of recovery has failed her, and which do not appear upon the face of her complaint. In such cases the defendant may await the assertion by plaintiff in her proof of such additional foundation for her right of recovery and may then oppose the same with his evidence of an equitable estoppel."

In that case the complaint was in the usual form employed in actions for claim and delivery. The answer denied, for want of information and belief, that plaintiff was the owner or entitled to the possession of said personal property and denied that he had ever taken wrongful possession of same, or that his detention thereof was unlawful; but, on the contrary, alleged that from a time prior to the commencement of the action and ever since said time he had been and continued to be the owner of and entitled to the possession thereof. The court made its findings in part showing equitable estoppel and entered judgment in favor of the defendant.

An examination of the complaint in the action at bar shows that the complaint is one in the usual form employed

in actions of claim and delivery; that the answer denied that the plaintiff was the owner entitled to the possession of the said personal property and alleged that the defendant was the owner of said personal property entitled to possession thereof. We conclude that under such circumstances the facts constituting the equitable estoppel need not be pleaded. (*Kenny* v. *Christianson, supra.*)

For the foregoing reasons the judgment is affirmed as to the Sturgis car, being Paige sedan, motor No. 171428, and is reversed as to the McKay car, being Paige sedan, motor No. 171994.

Marks, Acting P. J., and Barnard, J., concurred.