[Civ. No. 4420. Third Appellate District.—January 16, 1932.]

PACIFIC FINANCE CORPORATION (a Corporation), Appellant, v. J. T. HENDLEY et al., Respondents.

A. G. Bailey and G. J. Irwin for Appellant.

Neal Chalmers for Respondents.

PARKER, J., *pro tem.*—This is a controversy between appellant corporation and defendant Valley Investment Company. The last-named corporation is an association composed of respondent Guy C. Foulks and one Elliott.

This same case .was previously before the court and the full report thereof appears in 103 Cal. App., at page 335 et seq. [284 Pac. 736]. A reference thereto will suffice as a statement of facts. It will be observed from a reading of the report that the former judgment was reversed and the cause came back for further proceedings. On the second trial, the only evidence introduced was to show that

Elliott was without knowledge of any fact involved in the transaction.

As is evident from a reading of the reported case, the action involved the right of the respective parties in and to certain automobiles.

The opinion of the District Court' of Appeal left but one question open, namely, that of estoppel and this was left open only as a question of fact. However, the Supreme Court, in denying a petition for a hearing [285 Pac. 1048], used this language: "We withhold our approval of that portion of said opinion which purports to hold that a mortgagee is protected by the provisions of section 1142 of the Civil Code in the same way and to the same extent that a buyer under an executed sale of personal property from a person having possession thereof with power to dispose of the same is afforded protection by said section. While in some cases the words 'buyer' and 'purchaser' are used synonymously, and in others a 'purchaser' has been held to include a 'mortgagee', we know of no authority, and none has been cited by respondent which goes so far as to hold that a mortgagee is ever a 'buyer' at an executed sale." As a result, we must conclude that the law of the case will have no application to the problem of the status of a mortgagee under section 1142 of the Civil Code.

At the second trial, the judgment in which is now before us, the respondent offered testimony showing the complete lack of knowledge on the part of the partner Elliott. With this exception, the case was submitted for decision on the record and testimony of the former trial.

■ The general rule of law with respect to conditional sales is not in dispute. It is conceded that the owner of personal property may make a conditional sale of the same and deliver possession thereof, reserving the title thereto until payment of the agreed price, which title will be superior to that of a subsequent purchaser or mortgagee without notice of the reservation. (*Oakland Bank of Savings* v. *California P. B. Co.*, 183 Cal. 295–297 [191 Pac. 524].) It is a conceded fact, in the record before us, that plaintiff was the owner of the cars in question and that the source and extent of Hendley's rights in the property was by and through the terms of a contract of conditional sale

whereunder possession was given to Hendley. If the case ended there, the solution would be almost self-evident.

But another situation presents itself. Hendley was a dealer in automobiles and his possession of the cars was for the express purpose of sale and delivery to whomsoever might become the purchaser. Here another rule of law, corollary to the rule first announced, comes into operation. ■ If personal property is delivered, under a conditional sale, to a buyer who is engaged in the business of selling property of the same kind and, with the knowledge of the seller, is placed upon display for sale with other property, the holder of the reserve title is estopped to assert it against a *bona fide* subvendee for value. Section 1142 of the Civil Code at the time provided: "Where the possession of personal property, together with a power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business, for value, transfers to such buyer the title of the former owner."

In the instant case, the transaction between respondent Valley Investment Company and the dealer Hendley was a mortgage, without change of possession. (*Bonestell* v. *Automotive F. Corp.*, 69 Cal. App. 719 [232 Pac. 734].) There is no dispute concerning the fact that the Valley Investment Company did, without notice and in good faith, advance to Hendley the sum of $3,000 by way of loan and under a promise of repayment, the performance of which promise was secured by mortgage of the personal property here involved, to wit, the automobiles. ■ Respondent claims that its status as a mortgagee brings it within the terms of the section.

It is respondent's argument that a mortgage does vest in the mortgagee an interest in the property; that, as an elementary proposition, property may be acquired in but two ways, through descent or purchase; that the property or interest not having been acquired by descent must have been acquired by purchase and that a purchase necessarily involves a sale.

It may be that there is a trace of academic synonymy between the terms "mortgage" and "sale" but in the construction of a statute we must interpret words as being used in their ordinary and usual sense. And it is obvious

that in such use the terms have each a distinctive meaning. In the case of *Allen* v. *St. Louis Bank,* 120 U. S. 20 [30 L. Ed. 573, 7 Sup. Ct. Rep. 460, 462], it is said:

"It is manifest that, when a man is dealing with other people's goods, the difference between an authority to sell and an authority to mortgage or pledge is one that may go to the root of all motives and purposes of the transaction. The object of a person who has goods to sell is to turn them into money; but, when these goods are deposited by way of security for money borrowed it is a transaction of a totally different character. If the owner of the goods does not get the money, a different object and a different purpose are substituted for the first, namely, that of borrowing money and contracting the relationship of debtor with a creditor, while retaining a redeemable title to the goods, instead of exchanging the title to the goods for a title unaccompanied by any indebtedness, to their full equivalent in money."

It is true that in many cited cases, arising in other jurisdictions, and under varying statutes, the same protection has been accorded a mortgagee as to a purchaser for value. In these cases, it is apparent that the intent of the statute governed.

But the wording of our statute does not permit of such construction. The code section quoted provides for an *executed sale* to a *buyer* in good faith and in the ordinary course of business. We may pass the question as to whether or not the ordinary course of business, such as one with which we are dealing, contemplates the borrowing of money and the execution of mortgages to secure the payment thereof. But we cannot ignore the term "executed sale to a buyer". The term "executed" both in legal parlance and in its ordinary usage imports the idea that nothing remains to be done; that the transaction is complete and finished. The purpose and effect of a sale is to transfer title, either with or without possession; or, to adopt the most liberal view, to transfer an interest in property.

A chattel mortgage does not accomplish this end, as will hereafter more fully appear. In the absence of specific authority to the contrary we hold that respondent as a mortgagee to the property involved does not come within the provisions of the section. However, the terms of the

statute quoted are not all-embracing nor conclusive of the rights of respondent. An estoppel may be created against the owner of personal property in many ways and under many conditions other than those enumerated. Irrespective of the code section the rule of law first announced may be invoked, the statute merely affirming one condition where estoppel would arise as a matter of distinct enactment.

It is contended by respondent that all of the facts and circumstances of the case taken together suffice to create as against appellant an estoppel to urge its title against the claims of respondent. ■ Estoppel is a question of fact and the burden is upon the party asserting the estoppel to prove all of the elements constituting it.

It is conceded that there was no privity between appellant and respondent Valley Investment Company. ■ The theory of the asserted estoppel is that appellant by its acts and conduct has led respondent to believe that the dealer Hendley was empowered to deal with the property in his possession in all ways as though it were his own.

The facts of the instant case bring it squarely within the rule announced in *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267], and consistently adhered to in a long line of decisions down to the case of *California Standard etc. Co.* v. *Riverside Finance Co.*, 111 Cal. App. 151 [295 Pac. 555]. Under the undisputed facts of this case, it is conceded that as a matter of law the dealer Hendley was clothed with the power to sell the automobiles here in question and that a buyer in good faith and for value would be protected against the claim of appellant.

Many of the cases use language liable to mislead and language unnecessary to the decision. For instance, in affirming the rule as to the rights of one purchasing from a dealer clothed with authority to sell, the courts, in occasional instances, have gone beyond the question of sale and have given to the dealer a general power of disposition. Quoting from *General Sec. Corp.* v. *Reo Motor Car Co.*, 91 Cal. App. 16, at page 19 [266 Pac. 576, 577], we find this language: "Where the owner of property clothes another with the apparent title to or power of disposition over it, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner in such a case is estopped from afterwards asserting

his title.'' Manifestly, such statements are intended only as general expressions of the rule, without attempt at limitation, because, obviously, the one clothed with the apparent power of disposition could not make a gift of the property entrusted to him.

It is elementary that the party asserting the estoppel must have acted either on express representations of the party against whom the estoppel is asserted or upon appearances created by the latter, upon which appearances any person of ordinary prudence would act.

In the case before us, the dealer Hendley was engaged in the business of selling automobiles of various makes at a fixed place. He maintained an office and display rooms, wherein were exhibited the cars in question. Plaintiff, knowing this to be a fact and with the admitted intent that Hendley should offer for sale and sell the cars entrusted to him, did make delivery to Hendley of the cars in question.

It is conceded that mere delivery of personal property to another confers on the latter no implied powers of sale. This is illustrated in the cases of conditional sale and the rules governing, as set forth in *Oakland Bank* v. *California Brick Co.*, 183 Cal. 295 [191 Pac. 524]. Under those forms of contract almost complete *indicia* of ownership vests in the vendee; and yet the owner of the reserved title is not estopped, irrespective of the innocence or good faith of a third party purchaser, in the absence, of course, of other acts giving rise to an estoppel. But an exception is made and now well recognized where the owner gives possession to one whose business is the sale of similar goods. And that exception goes no further than the rule contemplates. Being an exception, it necessarily demands strict construction. The cases, both ancient and modern, are collated in *Carter* v. *Rowley, supra.* Under these authorities, we can go no further than to hold that appellant in this case gave the dealer Hendley full power to sell the cars in question, but did not give him any power to hypothecate the cars or to place thereon any lien by way of mortgage or otherwise.

In this state, the mortgage is but an incident of the indebtedness, the property is impressed with only a lien for the benefit of the mortgagee, the legal title remaining in the mortgagor. (*Blodgett* v. *Rheinschild,* 56 Cal. App.

736 [206 Pac. 674].) There exists no lien without an obligation. There can be no debt or other obligation to be secured. (17 Cal. Jur. 710.) So, therefore, necessarily when property is mortgaged it is put up as security only. The mortgage has no existence independent of the thing or debt secured by it. (*Estate of Fair*, 128 Cal. 607 [61 Pac. 184].) Therefore, in considering the scope and effect of a mortgage lien, some attention must be given the debt intended to be secured thereby.

Discussing the debt for which the mortgage was given in the instant case, there is no showing of any privity therewith on the part of appellant or that the debt was contracted directly or indirectly for its benefit. It seems obvious that if the debt was one of long standing and an old obligation of the dealer he would have no implied authority to hypothecate the property of appellant as security for its payment. There is no showing that appellant had any connection with the business of the dealer, independent of the consignment involved. We cannot enlarge the doctrine of the implied agency, to the end that one bringing his goods to the market place for sale thereby authorizes the one to whom they are thus entrusted to borrow money on the credit of his principal. And, necessarily, it amounts to the same thing if we hold the implied authority in the agent to pledge his principal's property. Further, there is nothing to indicate that the principal, appellant here, profited in any way, directly or indirectly, from the lien which the mortgagor secured.

We use the terms principal and agent for the reason that an estoppel arises in these cases primarily upon the theory of ostensible agency. The business of Hendley, as far as the record discloses, did not embrace that of a banker or finance company; he appears simply as a dealer in cars. His necessity for money was something personal to him and his business. If he incurred expense in the conduct of his business there was nothing implied whereby that expense was to become the debt of appellant. If he needed money to carry on his business as a dealer that was a matter entirely independent of his relationship with appellant here. And the conclusion seems inescapable that if, under the facts here shown, the dealer Hendley would have the implied power to hypothecate or pledge appellant's prop-

erty as security for debt incurred he would necessarily have the power as agent of appellant to incur the indebtedness on behalf of his principal. We think this too broad a power to imply; much broader than the facts permit; a power to sell property does not authorize the agent to mortgage it. (17 Cal. Jur. 828.) And, where the power to sell is implied the power to mortgage is not within the implication.

It may be noted that, in none of the authorities cited, is it held that delivery to a dealer clothes the latter with complete *indicia* of ownership. Such a conclusion would be unwarranted both as a proposition of law or as an inference of fact. Without further discussion of this branch of the case, we hold that the dealer Hendley had no power, express or implied, or arising out of the facts, to mortgage the property here involved.

There is, however, another phase of the case to be considered. We have used the term ''mortgage'' as descriptive of the transaction between the dealer Hendley and respondent. The transaction was properly so characterized only as a matter of law. (*Bonestell* v. *Auto-Motive Corp.*, 69 Cal. App. 719 [232 Pac. 734].) The transaction was one whereby Hendley gave a bill of sale to the autos, and retained possession thereof as a trustee for the respondent, with the purpose of continuing along uninterruptedly his business. The distinguishing features of the relationship being the creation of a debtor and creditor relationship with the autos as security.

None of the provisions of the Civil Code (sec. 2955 et seq.) were followed. There was no acknowledgment of the instrument or affidavit of good faith as in the code provided nor was the instrument recorded. It is obvious that the scheme was an evasion of the law's salutary provisions.

We are not called upon to determine whether or not the attempted mortgage would be void nor do we offer any opinion of that question. But the whole scheme of the law with reference to the mortgaging of personal property seems to demand something more than secret agreements. Here the property was left in the possession of the dealer with nothing to indicate any change in the business or any charge upon the property. Had the lien attempted been in the form required, the controversy could never have arisen because, under the provisions of section 2957 of the

Civil Code, 'all of the parties would have been required to make the affidavit that the mortgage was in good faith and without design to hinder, delay or defraud creditors. Obviously, such an affidavit could not have been made.

It appears that the entire transaction was one designed to promote the convenience of the parties themselves, wholly unmindful of any pre-existing or intervening rights and one, in itself calculated to mislead, and an attempted evasion of the law's requirements and the demands of open and fair business dealing.

The foundation of estoppel is justice and good conscience. As stated in Pomeroy's Equity Jurisprudence, fourth edition, page 1636: "Its object is to permit the unconscious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by the rules of the law, unless prevented by the estoppel; and the practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." The doctrine of estoppel is in the main equitable and even though this may not be a specifically accurate holding, still in the very nature of the doctrine there is some element of the maxim that one must come into a court of equity with clean hands. Estoppel, in its very essence, is somewhat of a superlaw; it stays the operation of the usual machinery employed to adjust the rights of men and halts proceedings to make certain of its justice. As it were, it tempers the wind to the shorn lamb. But, where the lamb is found carrying, concealed from view, shearing implements of its own, the necessity or wisdom of peculiar solicitude lessens.

The doctrine of estoppel does not contemplate that one whose course of conduct was premeditatedly designed to evade and undo the salutary provisions of the law should, upon failure in his purpose, suddenly become the beneficiary of the very thing he sought to destroy.

The judgment is reversed.

Preston, P. J., and Plummer, J., concurred.