TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------------------------
                               :

|  |  |  |
|---|---|---|
| OPINION | : | No. 88-802 |
|  | : |  |
| JOHN K. VAN DE KAMP | : | <u>DECEMBER 21, 1988</u> |
| Attorney General | : |  |
|  | : |  |
| RONALD M. WEISKOPF | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

-------------------------------------------------------------------


THE HONORABLE L.B. ELAM, COUNTY COUNSEL, COUNTY OF SACRAMENTO, has requested an opinion on the following question:

Does the Hague Convention Abolishing The Requirement Of Legalization For Sovereign Public Documents supersede the requirement of section 27293 of California's Government Code that an English translation accompany an instrument that is certified in whole or in part in any language other than English before it can be recorded?

CONCLUSION

The Hague Convention Abolishing The Requirement Of Legalization For Sovereign Public Documents supersedes the requirement of section 27293 of California's Government Code insofar as the latter calls for an <u>apostille</u> to be translated into English before the document it certifies can be recorded in California.

ANALYSIS

Section 27293 of California's Government Code provides that with minor exception a document may not be recorded in California if it is executed or certified in whole or in part in any language other than English, unless accompanied by a verified translation. The Hague Convention Abolishing The Requirement Of Legalization For Foreign Public Documents establishes a system for the certification of certain "public documents" through a certificate known as an <u>apostille</u>. The presence of an <u>apostille</u> on a document certifies the genuineness of the signature upon it and the capacity of the person who signed it, and under the terms of the Convention it is the only formality

necessary to do so. But as we shall also see, under the Convention an apostille need not be, and is not likely to be, in the English language.

We are thus asked to reconcile the demand of Government Code section 27293, that a certification of a document be in English (or a translation of it be provided) before the document it certifies can be recorded in California, and the scheme of the Hague Convention which contemplates that certain documents may be certified for use in the United States by apostilles that are not in English. To be clear on the issue at the outset, the Hague Convention only deals with providing a particular certification on certain kinds of foreign documents and does not deal with questions relating to the actual contents of the documents themselves. Accordingly no question can arise because of the Convention as to whether a document that is executed in a foreign language may be recorded in California just because it has been certified by an apostille. The answer to that would plainly be "no".[1]

However, a question does arise as to whether a document that has been executed in English (or one for which an English translation has been provided under section 27293) may be recorded in California when the document is certified by an apostille that is not in English. There, we are specifically asked whether the provisions of the Hague Convention supersede those of the Government Code section, so that such a document may nevertheless be recorded without an English translation of the apostille. After first examining the provisions of California law dealing with certifications and the recording of documents, and then the mechanics of the Hague Convention, we will conclude that the provisions of the latter supersede those of Government Code section 27293, and that a document in English that has been certified by an apostille that is not in English, may be recorded in California without an English translation of the apostille being provided.

1.    California's Code Provisions Dealing With Certifications and Recording Of Documents

Various sections of California's Government Code set forth particular requirements that must be met before certain documents or instruments may be recorded in California. (See e.g.,

---

[1]In 1982 we issued an Opinion dealing with the Hague Convention, 65 Ops.Cal.Atty.Gen. 205, in which we concluded that by reason of the supremacy clause of the federal Constitution the terms of the Convention superseded the provisions of section 1183 of the Civil Code, which then did not recognize the apostille as a means of certifying (proving or acknowledging) a foreign notary's signature. In 67 Ops.Cal.Atty.Gen. 93 (1984) we observed by way of footnote that "[b]y parity of our prior reasoning in [65 Ops.Cal.Atty.Gen. 205] it would appear that [the Hague Convention] would supersede the provisions of section 27293 of California's Government Code insofar as it forbids a recorder accepting an instrument for record that 'is executed or certified in whole or in part in any language other than English.'" (67 Ops.Cal.Atty.Gen. 93, 94 fn. 1.) We never intended to imply thereby that a document executed in a language other than English could be recorded just because it was certified with an apostille, and any lingering implication to that effect is expressly disavowed.

Gov. Code, § 27280, et seq.; cf., 67 Ops.Cal.Atty.Gen. 93, 93-95 (1984).) They form a comprehensive, logically sequenced "statutory system touching in abundant detail virtually every procedural aspect of the subject of recording of documents." (63 Ops.Cal.Atty.Gen. 905, 909-910 (1980).)

Section 27287 provides that with certain enumerated exceptions, before an instrument can be recorded, (a) its execution must, inter alia, either be (i) acknowledged by the person executing it or (ii) proved by a subscribing witness, and then (b) that the acknowledgment or proof be certified as prescribed by law. Section 27293, one of the foci of this opinion, then provides that

". . . when an instrument intended for record is executed or certified in whole or in part in any language other than English, the recorder shall not accept the instrument for record."

The section provides, however, that such a document may be recorded if it is accompanied by an English translation that has been verified and certified by a judge to be a true translation. (§ 27293.)[2]

---

[2]Section 27293 provides in full as follows:

"(a) Except as otherwise provided in subdivision (b), when an instrument intended for record is executed or certified in whole or in part in any language other than English, the recorder shall not accept the instrument for record. A translation in English of an instrument executed or certified in whole or in part in any language other than English may be presented to the judge of a court of record, and upon verification that the translation is a true translation the judge shall duly make certification of the fact under seal of the court, attach the certification to the translation, and attach the certified translation to the original instrument. For such verification and certification, a fee of one dollar and fifty cents ($1.50) shall be paid for each folio contained in the translation. The attached original instrument and certified translation may be presented to the recorder, and upon payment of the usual fees the recorder shall accept and permanently file the instrument and record the certified translation. The recording of the certified translation gives notice and is of the same effect as the recording of an original instrument. Certified copies of the recorded translation may be recorded in other countries, with the same effect as the recording of the original translation; provided, however, that in those countries where photostatic or photographic method of recording is employed, the whole instrument, including the foreign language and the translation may be recorded, and the original instrument returned to the party leaving it for record or upon his or her order.

"(b) The provisions of subdivision (a) do not apply to any instrument offered for record which contains provisions in English and a translation of the English provisions in any language other than English, provided that the English provisions and

A preliminary explanation of the notions of the "execution" and "certification" of documents is helpful to fully understand the issue presented. With regard to the former activity, one meaning of the term the "execution" of a document or instrument, is the performance of the final act necessary to carry it into effect, such as its signing or delivery. (Cf., Black's Law Dict. (Rev. 4th ed. 1968) at 676, citing inter alia, Pacific Finance Corporation v. Hendley (1932) 119 Cal.App. 697, 701 ["that nothing remains to be done; that [a] transaction is complete and finished"]). But such definition does not fit the language of section 27293 which speaks of an "instrument . . . executed . . . in whole or in part in any language other than English," for it does not make sense to require a document for record to have been "signed" in English with an "English" signature. Since "[i]nterpretive constructions which . . . defy common sense, or lead to . . . absurdity, are to be avoided" (California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844), we look to another meaning of the term "execution of a document," that which embraces the entire process of making it. (Cf., Black's Law Dict., supra.) We believe the Legislature had that more general notion in mind when it referred to instruments "executed" in languages other than English. The requirement of section 27293, that an instrument be executed in English before it can be recorded, would thus refer to the body of the instrument itself and require that it be in the English language for recordation to take place.

Turning to the matter of certification, we have seen how, under section 27287, the execution of certain types of documents must be "acknowledged" or "proved," and then that the acknowledgment or proof be certified "as provided by law." An "acknowledgment" is a formal declaration by a person who executed an instrument, before an authorized official, that it is his or her free act and deed. (Black's Law Dict., supra at 39.) "The acknowledgment is . . . evidentiary in character and its object is to entitle the instrument to be recorded or to permit its introduction in evidence." (1 Cal.Jur.3d, Acknowledgments, § 2, p. 337.) The execution of an instrument, when not acknowledged, may be "proved" by the party executing it or, as mentioned in section 27287, by a subscribing witness. (Civ. Code, § 1195; cf., 1 Cal.Jur.3d, Acknowledgments, §§ 51-53.) In the latter situation, the subscribing witness must prove, inter alia, that the person whose name is subscribed to the instrument as a party, is the person who executed it, and that the witness subscribed his name as a witness. (Civ. Code, § 1197.)

The mechanics for the subsequent certification of an acknowledgment or proof are found in the Civil Code. (Civ. Code, div. 2, pt. 4, tit. 4, ch. 4, art. 3, § 1180, et seq.) It provides that once a document has been acknowledged or proved, the officer before whom the acknowledgment is made, or before whom proof is taken, must attach to it, or endorse on it, a "certificate of acknowledgment" (Civ. Code, § 1188) or a "certificate or proof" (Civ. Code, § 1200), as appropriate. The purpose of the "certificate of acknowledgment" is "to establish, under oath, the identity of the person making the acknowledgment and the genuineness of the signature subscribed to the instrument." (1 Cal.Jur.3d, Acknowledgments, § 2, supra.) The "certificate of proof" sets forth proof of the execution of a document and that the party whose name is subscribed to it, executed it. (Whitney v. Arnold (1858) 10 Cal. 531, 533.)

---

the translation thereof are specifically set forth in state or federal law."

A "certificate of acknowledgment" must be "substantially in the forms . . . prescribed [by sections 1189 through 1193]." (§ 1188.) By way of example, section 1189 sets forth the "general form" for a certificate of acknowledgment:

"The certificate of acknowledgment, unless it is provided otherwise in this article, shall be substantially in the following form: "State of _____ , County of _____ , ss. On this ___ day of ___ , in the year ___ , before me ([name of officer]) personally appeared ___ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he (she or they) executed it." (Civ. Code, § 1189.)[3]

Section 1200 sets forth what must be contained in a "certificate of proof":

"An officer taking proof of the execution of any instrument must, in his certificate indorsed thereon or attached thereto, set forth all the matters required by law to be done or known by him, or proved before him on the proceeding, together with the names of all the witnesses examined before him, their places of residence respectively, and the substance of their testimony." (Civ. Code, § 1200.)

For example, we remember that for proof of the execution of a non-acknowledged instrument by a subscribing witness, (1) section 1197 requires him or her to prove that the person whose name is subscribed to the instrument as a party is the person described in it, and that such person executed it, and that the witness subscribed his name thereto as a witness, and (2) section 1196 requires the officer taking the proof either to personally know the subscribing witness or to have his or her identity proved to him by the oath of a credible witness who is personally known to the officer. Under section 1200, such matters must be set forth in the "certificate of proof."

If they comply with the foregoing provisions of the Civil Code, a "certificate of acknowledgement" or a "certificate of proof" of a writing (other than a will) is deemed prima facie evidence of the facts recited in the certificate and the genuineness of the signature of each person by whom the writing purports to have been signed. (Evid. Code, § 1451.) Again, such certifications permit the introduction of a document into evidence or enable it to be recorded. (1 Cal.Jur.3d, Acknowledgments, §§ 2, 4, 53, supra.)

As we have seen, a certification must be in the English language in order for the document it certifies to be recorded. (§ 27293.) And so we come to the nub of this Opinion, for the foregoing are not the only types of certifications that the Civil Code contemplates, and at least one that it does is not likely to be in the English language.

---

[3]Section 1190 and 1190.1 set forth the form and substance of a certificate of acknowledgment of an instrument executed by a corporation; section 1190a, the form for one executed by a partnership; section 1191, the form for one by a public corporation, agency or political subdivision; and section 1192, the form for one by an attorney in fact.

Sections 1180 through 1183 of the Civil Code set forth the "officers" before whom proofs and acknowledgments of instruments may be made. Said persons vary, depending on where the formality occurs -- within California (§ 1180, 1181), outside California but within the United States (§ 1182), and outside the United States (§ 1183). (See 65 Ops.Cal.Atty.Gen. 205, 206, supra.)

When the proof or acknowledgment of an instrument is made outside the United States, section 1183 provides that it be made before: (a) a minister, commissioner, or charge d'affaires of the United States, resident and accredited in the country where the proof or acknowledgment is made; (b) a consul, vice consul, or consular agent of the United States resident in the country where it is made; (c) a judge of a court of record of the country where it is made; (d) commissioners appointed by the Governor or Secretary of State for that purpose; or (e) a notary public. In case of the last, the signature of the notary must in turn also be proved or acknowledged; section 1183 currently provides as follows:

"If the proof or acknowledgment is made before a notary public, the signature of the notary public shall be proved or acknowledged (1) before a judge of a court of record of the country where the proof or acknowledgment is made, or (2) by any American diplomatic officer, consul general, consul, vice consul, or consular agent, or (3) by an apostille (certification) affixed to the instrument pursuant to the terms of The Hague Convention Abolishing the Requirement of Legalization For Foreign Public Documents." (§ 1183, as amended by Stats. 1982, ch. 520, § 13, p. 2448, and Stats. 1984, ch. 1017, § 1, p. 3533; emphasis added.)[4]

Under section 27293 of the Government Code, the certificate of proof or acknowledgment of a foreign notary's signature would have to be in English for the underlying document to be recorded in California. But therein lies the problem prompting the within opinion request, for as we now see, if that certification is made by an apostille pursuant to the terms of the Hague Convention, it is not likely to be so. We therefore now turn to the other focus of this opinion, the Hague Convention Abolishing The Requirement Of Legalization For Foreign Public Documents.

---

[4]Prior to its amendment in 1982, section 1183 did not provide for the certification of a notary's signature through an apostille. In 65 Ops.Cal.Atty.Gen. 205 (1982) we concluded that "where the proof or acknowledgment of an instrument involves authenticating the capacity of the signer or the genuineness of the signature or seal on a document that is a 'public document' from a country that is signatory to the [Hague] Convention, the provisions of the Convention supersede those of Civil Code section 1183." (65 Ops.Cal.Atty.Gen. 205, 209-210.) After the opinion issued the Legislature amended section 1183 to recognize that a notary's signature could be proved or acknowledged by an apostille. (Stats. 1982, ch. 520, supra.)

2.    The Hague Convention Abolishing The Requirement Of Legalization For Sovereign Public Documents.

In 1981 the United States became a party to the Hague Convention Abolishing The Requirement Of Legalization For Foreign Public Documents, which addresses the basic matter of the formalities needed to prove or acknowledge the genuineness of certain "public documents." (T.I.A.S. 10072; see 65 Ops.Cal.Atty.Gen. 205, 207 & fn. 1 (1982).)[5] The purpose of the Convention was to abolish the time-consuming and burdensome process known as the chain-certificate method of document certification, the last step of which was performed by diplomatic and consular officials of the country in which the foreign document was to be used. Instead the Convention substitutes a simplified system for attaining the same objective through the substitution of a standard certificate bearing one signature and forbids diplomatic or consular authentication of that certificate. (65 Ops.Cal.Atty.Gen. 205, 208-209, citing Letter of Submittal, Dept. of State (8 April 1976).) The certificate is known as an apostille after its required French title. (Conv., art. 4.)

The Hague Convention applies to four types of "public documents" which have been executed in the territory of one contracting country and which have to be produced in the territory of another contracting country--(a) documents emanating from an authority or an official connected with its courts or tribunals, including those emanating from a public prosecutor, a clerk of a court or a process server; (b) "administrative documents"; (c) "notarial acts"; and (d) "official certificates which are placed on documents signed by persons in their private capacity, such as official certificates recording the registration of a document . . . and official and notarial authentications of signatures." (Conv., art. 1; emphasis added.)[6]

The Convention first abolishes the necessity for the "legalization" of such documents, i.e., "the formality by which the diplomatic or consular agents of the country in which the document has to be produced certify the authenticity of the signature, the capacity in which the person signing the document has acted, and where appropriate, the identity of the seal or stamp which it bears." (Conv., art. 2.) Then, in its stead, it creates a new system for their certification, known as aposition, which we now describe in more detail.

_____

[5]The full text of the Convention appears as Appendix A to the cited 1982 Opinion. (See 65 Ops.Cal.Atty.Gen. 205, 212-217.)

[6]The notarial authentication of a signature (item (d)) is not of the same genre as a notarial "act" (item (c)). The latter, unfortunately, is a poor translation of the prevailing French text of the Convention which spoke of notarial "actes." That more precisely should be translated as notarial "documents" or "certificates" or "deeds." (Cf., actes publics = public documents; acte notarie = notarial deed; acte de naissance/de deces = birth/death certificate.) In continental practice there is an important category of documents called "notarial documents" "which are treated for many purposes with the same dignity as judicial documents." (Amram, Toward Easier Legalization of Foreign Public Documents (Mar. 1974) 60 Am.Bar Assn. J. 310, 311-312.)

7.                                                                    87-1002

The Hague Convention creates the apostille and establishes it as a standard certificate for certifying signatures on "public documents" that have been executed in the territory of parties to the Convention.  If we recall our earlier discussion of the functions served by the "certificate of acknowledgment" and the "certificate of proof", we can see that such are similar to the function performed by the apostille, for "when properly filled in, it will certify the authenticity of the signature, the capacity in which [a] person signing the document has acted, and where appropriate, the identity of the seal or stamp which the document bears."  (Conv., art. 5.)

Article 3 of the Convention makes the addition of an apostille the only formality that the parties to the Convention may require regarding that certification on documents which the Convention covers.    The Article provides:

> "The only formality that may be required in order to certify the authenticity
> of the signature, the capacity in which the person signing the document has acted,
> and where appropriate the identity of the seal or stamp which it bears is the addition
> of the certificate described in Article 4 issued by the competent authority of the
> [country] from which the document emanates."  (Conv., art. 3; emphasis added.)

Article 3 also provides, however, that the parties to the Convention, either unilaterally or by agreement between two or more of them, may simplify the certification of their public documents, or abolish the need for it altogether.  If they do not though, the addition of an apostille was intended to be the maximum or most stringent formality for that certification they could require.  (Cf., Amram, Toward Easier Legalization of Foreign Public Documents (Mar. 1974) 60 Am. Bar Assn. J. 310, 311; Comment, The United States and The Hague Convention Abolishing The Requirement Of Legalization For Foreign Public Documents (1970) 11 Harv. Internat. Law J., 476, 480.)

The prescribed model for the apostille appears as an Annex to the Convention.  (Conv., art. 4.)  It is of simple format, containing ten items, and centered across its top is its prescribed title, which must "be in the French language."  (Ibid.)  We reproduce it here:

APOSTILLE

(Convention de la Haye du 5 octobre 1961)

1. Country: _____

   This public document

2. has been signed by _____

3. acting in the capacity of _____

4. bears the seal/stamp of _____

   _____

Certified

5. at _____    6. the _____[date]_____

7. by _____

8. Nº. _____

9. Seal/Stamp:                         10. Signature: _____

   _____

    An <u>apostille</u> must be in this form, i.e. "in the form of the model annexed to the . . . Convention." (<u>Conv.</u>, art. 4.)  Inasmuch as the text of the Convention is in French and English (<u>Conv.</u>, Subscription), so too would have been the terms appearing on the model of the <u>apostille</u> appended to it.  But the Convention permits an <u>apostille</u> to "be drawn up in the official language of the authority which issues it." (<u>Conv.</u>, art. 4.)  It also provides that "[t]he standard terms appearing therein may be in a second language also." (<u>Conv.</u>, art. 4.)

    Thus, although the standard terms on an <u>apostille</u> may appear in English, especially if the document being authenticated is to be used in the United States or another English-speaking country (see 65 Ops.Cal.Atty.Gen. 205, 208 fn. 4, citing Amram, <u>supra</u>, 60 Am. Bar Assn. J. at 312), the <u>apostille</u> itself will probably be drawn in the (or an) official language of the country in which it issues. (Cf., Comment, <u>supra</u>, 11 Harv. Internat. L. J. 476, 479.)  What that means is that the <u>apostille</u> and the certification it provides is not likely to be in English.[7]  For example, an <u>apostille</u>

_____

[7]In 1981 some 28 countries were parties to the Hague Convention: Austria, Bahamas, Belgium, Botswana, Cyprus, Fiji, France, West Germany, Hungary, Israel, Italy, Japan, Lesotho,

authenticating a public document emanating from France may contain the words "This public document . . . has been signed by ___ acting in the capacity of ___" in English as well as French, but the words that will fill the first and, more importantly the second blank, may only be in French. And certainly the title of the <u>apostille</u>, by terms of Article 4 of the Convention "[will] be in the French language."  An even more difficult scenario is presented in the case of an <u>apostille</u> that authenticates a document from a country which has an official language with an alphabet that does not use roman letters, e.g., Cyprus, Israel, or Japan.

Are such <u>apostilles</u> subject to required translation under section 27293 of the Government Code before the documents they certify can be recorded in California?

        3.      Resolution.

Preliminarily we should observe that the scenario about which this opinion revolves is not likely to arise.  As mentioned at the very outset, the Hague Convention is of limited application:  it only applies to "public documents," and with respect to them only certifies the authenticity of their public aspect -- i.e., the genuineness of the signature upon them, the capacity in which the signer acted, and where appropriate the identity of the seal or stamp which the document bears. (<u>Conv.</u>, art. 5.)  Thus, as we have noted before, "[t]he question of the probative force of a document is <u>not</u> governed by the Convention and continues to be determined by California law. . . ." (65 Ops.Cal.Atty.Gen. 205, 209 fn. 7), and the Convention does not deal with and does not purport to authenticate the private aspects of private documents which carry official certification, "such as a certificate of registration or an official authentication of a signature." (Amram, <u>supra</u>, 60 Am. Bar Assn. J. 310, 312.)

The thrust of the Convention is with the <u>apostille</u>, and it is only <u>that certification</u> which the Convention says may be in the official language of the issuing authority.  Thus, it is only the <u>apostille</u> which, if it is written in whole or in part in a language other than English, will conflict with Government Code section 27293 for being a certification that is not in English.  The document which it certifies will still have to be translated to be recorded under the section, since it would be executed in a language other than English.  And even a first certification, such as a notarization by a foreign notary, will have to be translated for the document to be recorded, because the document would in part be certified in a language other than English.

---

Liechtenstein, Luxembourg, Malawi, Malta, Mauritius, the Netherlands, Portugal, Seychelles, Spain, Suriname, Swaziland, Tonga, United Kingdom, United States and Yugoslavia.  (See 65 Ops.Cal.Atty.Gen. 205, 217-219 [Appendix B].)  By rough reckoning, a vast majority (25) of them use a language other than English as an official language, and since with <u>aposition</u> authentication is to be done by an official of the country in which the document is executed and not by an official of the country in which the document is to be used or produced, the numbers make it likely that an <u>apostille</u> will not be in English.

It is therefore difficult to imagine a situation arising where a document would be offered for recordation in California with the document and perhaps a first certification (notarization) having been translated pursuant to section 27293, but the accompanying apostille not. In light of the simplicity and utter brevity of an apostille, little additional effort in translation would be necessary in its direction, and more likely than not, it too will have been translated at the same time. Nevertheless, however unlikely the occurrence, we proceed to address the situation of a foreign document being offered for record in California with everything but its accompanying apostille translated into English pursuant to section 27293.

That section clearly prohibits the recording of an instrument which has been "executed or certified in whole or in part in any language other than English. . . ." As it simply but forcefully states, "the recorder shall not accept the instrument for record." (§ 27293.) The essence of the section has been part of California law since at least 1921 (Stats 1921, ch. 356, § 1, p. 535, adding former Pol. Code, § 4131a), if not since admission (cf., Wilson v. Corbier et als. (1859) 13 Cal. 166, 167), and its purpose was then, as it is now, to permit recorders to know what documents are being offered for record and whether they have been properly certified, and to enable those who use the recording system to know what the documents on record say.

But the United States has become a party to the Hague Convention, which enjoys the status of a treaty. (United States v. Pink (1942) 315 U.S. 203, 230; Dr. Ing H.C.F. Porsche A.G. v. Superior Court (1981) 123 Cal.App.3d 755, 758 fn. 1.) Section 2 of Article VI of the federal Constitution, the "supremacy clause," provides as follows:

> "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." (U.S. Const., art VII, § 2; emphasis added.)

Under the "supremacy clause" then, the terms of the Hague Convention have now become the supreme law of the land "anything in the constitution or laws of any State to the contrary notwithstanding." (U.S. Const., art. VI, cl. 2; cf., Cal. Const., art. III, § 1; 63 Ops.Cal.Atty.Gen. 647, 654 (1980).) By those terms the United States has undertaken to abolish the need for the "legalization" of foreign public documents to be produced in its territory (Conv., art. 2) and to make the addition of an apostille "the only formality that may be required in order to certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears. . . ." (Conv., art. 3.) Also under terms of the Convention, "[t]he signature, seal and stamp on [an apostille] are exempt from all certification." (Id., art. 5.)

California law clearly recognizes, albeit incompletely[8], the existence of the <u>apostille</u> and the function it serves. We have seen how section 1183 of the Civil Code now makes certification by <u>apostille</u> an acceptable means of proving or acknowledging the signature of a foreign notary. And recalling again our discussion of "certificates of proof" and "certificates of acknowledgement," we know that an <u>apostille</u> serves the same function as is performed by those certifications: establishing the identity of a person who executed an instrument and the genuineness of the signature on it, so that the instrument might be recorded. (See 65 Ops.Cal.Atty.Gen. 205, 207.) But contrary to the Hague Convention, section 27293 would add an additional formality in order for an <u>apostille</u> to perform that function in California, its being translated into English, and also contrary to the Convention, it would add an additional certification to it, that of a judge certifying the veracity of that English translation.

In 65 Ops.Cal.Atty.Gen. 205 (1982) we were asked whether the Hague Convention superseded the then extant provisions of Civil Code section 1183 which, as noted (fn. 4, <u>ante</u>), did not recognize the authentication of foreign public documents, particularly notarizations of private documents, by <u>apostille</u>. With particular pertinence to the issue herein, we acknowledged the validity of the traditional state concern of wanting to assure the genuineness of documents, especially those which affect real property, through establishing "requisites to recording", but we said that such concern was "subordinate to the paramount power of the federal government to affect by treaty. [Citations]." (<u>Id.</u> at 211.) Inasmuch as we found that the Convention addressed the same concerns as section 1183, assuring the genuineness of documents, but was inconsistent with it, we concluded that by reason of the supremacy clause the Convention superseded the provisions of the section to the extent of their inconsistency, "even though the state [was] otherwise clearly authorized to act in the premises. [Citations]." (65 Ops.Cal.Atty.Gen. at 211-212.)

One aspect of the concern voiced in California's "English only" prerequisite to the recording of documents also goes to assuring the genuineness of the document to be recorded, for how could one know whether a document is genuine if one does not know what it says. But the concern of section 27923 also has another aspect that goes beyond that. As discussed, that concern founding the section is one of long standing and reflects a very real need for recorders who record documents and the public who use them to be able to know what is offered for and is on record. But

---

[8]For example the Legislature has never amended section 1454 of the Evidence Code to reflect the Hague Convention's <u>apostille</u> and the section still only recognizes chain certifications with final diplomatic or consular participation in order to prove the genuineness of a foreign official's signature. Compliance with the section's demand will be difficult in the case of "public documents" emanating from signatories to the Convention because under Article 9 the United States must "take the necessary steps to prevent the performance of legalizations by its diplomatic or consular agents in cases where the . . . Convention provides for exemption." (<u>Conv.</u>, art. 9.) Moreover, as we said in 65 Ops.Cal.Atty.Gen. 204, <u>supra</u>, "California cannot have American diplomatic and consular personnel . . . participate in the process of certifying public documents emanating from signatories to the Convention when our federal government has agreed to the abolition of their participation therein." (<u>Id.</u> at 211.)

are any of these aspects of the section really compromised by the presence of a non-English apostille on a document?

The uniform format and French title for the apostille were deliberately chosen to facilitate its immediate recognition and to permit a document so authenticated to be recognized at a glance in any country. (65 Ops.Cal.Atty.Gen. 205, 208 fn. 4; Comment, supra, 11 Harv. Internat. L. J. 476, 479, 482.) Its format is amazingly simple and brief and, as we proceed to explain, it does not really matter whether what it says can be fully understood.

Since the title of an apostille must "be in the French language" (Conv., art. 4), such will always appear in roman lettering. Thus even if an apostille emanates from a country which does not use roman letters in its alphabet, its title, "Apostille/(Convention de la Haye du 5 Octobre 1961)," will be invariable and the presence of the apostille immediately recognized. That in turn will serve to tell a person, even if he or she could not read the apostille itself, that the document to which it was affixed is genuine. For example, in our scenario the very presence of an apostille will tell that a certain notary, in proper capacity, has affixed his or her signature and seal to a private document. Then, since the underlying document and that notarization will have to be translated into English in order for the document to be recorded, the recorder and the public will know exactly what the document says, who executed it, and who performed that preliminary certification.

What difference would it then make whether the recorder or the public could also read the apostille? Its very presence on the document would suffice to tell the recorder that the document is genuine and properly certified, and the accompanying English translation of the document and notarization will enable them to be read. Thus it would be irrelevant to California's concerns expressed in section 27293 for the genuineness and readability of documents, that the recorder and the public might not also be able to read an accompanying apostille that was not translated into English.

Again, in 65 Ops.Cal.Atty.Gen. 205 we concluded that by reason of the supremacy clause of the federal constitution, the provisions of the Hague Convention to which the United States is signatory, superseded the inconsistent demands for authentication of documents then found in section 1183 of the Government Code. (Id. at 211-212.) Under the Convention an apostille is the only formality that is needed to prove or acknowledge the genuineness of certain foreign public documents, and under the Convention one need not be in English. (Conv., art. 4 & Annex; cf., id., art. 3.) The formalities of section 27293 would be inconsistent therewith insofar as it would call for an apostille certifying a "public document" from a signatory state to be translated into English in order for the document to be recorded in California. And in the particular situation involving the certification by apostille of a foreign notary's signature, the section's demand would also be inconsistent with section 1183 of the Civil Code which now permits proof or acknowledgment thereof to be made "by an apostille (certification) affixed to [an] instrument pursuant to the terms of The Hague Convention. . . ." (Civ. Code, § 1183(e)(3).)

Whereupon, following our former opinion, 65 Ops.Cal.Atty.Gen. 205, we conclude in the premises herein that the Hague Convention Abolishing The Requirement Of Legalization For

Foreign Public Documents supersedes the requirement of section 27293 of California's Government Code to the extent of their inconsistency, i.e., the section's demand that an English translation of an <u>apostille</u> accompany an instrument before the instrument can be recorded.[9]  A document that is in English, or one which is not but which is accompanied by a certified English translation, may be recorded without further ado, even though it is certified by a non-English <u>apostille</u>.

\* \* \* \* \*

---

[9]Since article VI, clause 2 of the United States Constitution makes treaties, including the Hague Convention, the "supreme law of the land . . . anything in the Constitution or laws of any state to the contrary notwithstanding," the provisions of the Hague Convention would take precedence over newly adopted section 6 of article III of the California Constitution ("English is the official language of the State of California") to the extent that the latter is read to require that an <u>apostille</u> be translated into English in order for a document it certifies to be recorded. Similarly, the requirements of the Hague Convention would take precedence over the requirements of article III, section 3.5 of the California Constitution insofar as the latter may require a recorder to enforce section 27293's translation requirement until an appellate court had ruled it unconstitutional.  (See 68 Ops.Cal.Atty.Gen. 209, 219-222.)